**Michael L. BECKMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4.**

Court of Appeals of Alaska.

Oct. 12, 1984.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Anne D. Carpeneti, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Michael L. Beckman was convicted of escape in the second degree, former AS 11.56.310(a)(1)(B). Beckman appeals, contending that the trial court erred in failing to dismiss his indictment and in improperly instructing the jury concerning the elements of the offense. We reverse.

## FACTS

Beckman was originally convicted of passing forged checks. Superior Court Judge Milton M. Souter sentenced Beckman to serve seven years and nine months in prison with five years suspended. After

serving the unsuspended portion of his sentence Beckman was released. However, in the summer of 1982 he violated the conditions of his probation. Following a probation revocation hearing, Judge Souter modified the conditions of Beckman's probation, requiring him to complete an eighteen-month period of residential alcohol treatment at Akeela House.[1] The order modifying Beckman's probation also required Beckman to remain incarcerated until space for him became available at Akeela House.[2]

Several days after the revocation hearing, when space became available at Akeela House, a representative of that program, Frederick Toenies, went to the jail where Beckman was being held and secured Beckman's release. In the parking lot outside the jail Beckman ran away from Toenies. Beckman was arrested the next day and charged with escape.

Prior to trial, Beckman moved to dismiss the escape charge, arguing that, at the time he ran from Toenies, he was released on probation and was no longer in custody. The state opposed Beckman's motion, relying primarily on *Lock v. State*, 609 P.2d 539 (Alaska 1980). The state argued that the Akeela House residential treatment program was custodial in nature and that Beckman had therefore committed escape when he fled from Toenies.

Superior Court Judge J. Justin Ripley accepted the state's argument and denied Beckman's motion to dismiss. The case proceeded to trial. In conformity with his ruling on the motion to dismiss, Judge Ripley gave the following jury instruction, over Beckman's objection:

> Under Alaska law, a person in a facility such as Akeela House pursuant to a court order is, legally, "in custody" although the person is on probation.

> A person in a facility such as Akeela House pursuant to court order is considered to be in custodial confinement, and that is reflected in the fact that all time served in such a facility is credited and counted as "time served" against any jail sentence to be served.

The jury returned a verdict convicting Beckman, and Beckman appealed. On appeal, Beckman contends that, as a matter of law, he was not officially in custody when he fled from Toenies.

## DISCUSSION

Former AS 11.56.310(a)(1)(B), under which Beckman was convicted, provided:

> (a) A person commits the crime of escape in the second degree if, without lawful authority, he
> (1) removes himself from
> (B) official detention on a charge of a felony or for extradition.

"Official detention" is, in turn, defined in AS 11.81.900(b)(34), which states:

> "[O]fficial detention" means custody, arrest, surrender in lieu of arrest, or confinement under an order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release.

---

1. Akeela House is a private institution in Anchorage providing residential and non-residential programs of drug rehabilitation therapy.

2. Although it is not clear from the record, Beckman was apparently arrested for violating the conditions of his probation and remained in jail at the time of his probation revocation hearing. The order modifying Beckman's probation issued by Judge Souter following the December 17, 1982, hearing provided in relevant part:

> Defendant shall remain on probation subject to all of the General Conditions incorporated in this court's Order to Modify or Revoke Probation entered in this case on April 6, 1981 and subject to the additional special condition that defendant shall satisfactorily participate in a residential treatment program at Akeela House which shall not exceed eighteen (18) months in duration. Defendant shall remain in jail until Akeela House takes him into its custody. Defendant shall receive credit for time served in jail because of not having made bail on the instant probation revocation petition and shall receive credit for time served while hereafter participating in the aforesaid Akeela House residential program.

In conjunction with the order modifying Beckman's probation, Judge Souter also apparently issued a temporary order to the Division of Corrections, directing that Beckman be held until space became available at Akeela House and authorizing his release to Akeela House at that time.

The parties agree that the crucial issue in this case is whether, under the definition of "official detention" in AS 11.81.-900(b)(34), Beckman was in "confinement under an order of a court" when he ran from Toenies.[3] We conclude that he was not.

In *Lock v. State*, 609 P.2d 539, 545–46 (Alaska 1980), a person participating in the residential treatment program at Akeela House was held to be subjected to a significant deprivation of liberty and was therefore deemed to be "in custody" and entitled to receive credit against his jail sentence for time served in the program.[4] *See also Schwing v. State*, 633 P.2d 311 (Alaska App.1981). Accordingly, there can be little doubt that Beckman's participation in the Akeela House program amounted to a form of confinement.

■ However, the conclusion that Beckman was under confinement at Akeela House does not end the inquiry. More than mere confinement is required; under the definition of "official detention" in AS 11.81.900(b)(34), a person must be confined "under an order of a court." Here, although Beckman was confined, that confinement was not "under an order of a court." Under the terms of the superior court's order modifying Beckman's probation, the Division of Corrections lost custody over Beckman upon his release to Akeela House. Akeela House itself was never ordered to confine Beckman, either directly by the court or indirectly through the Division of Corrections. The superior court's order modifying Beckman's probation did not confer upon the Division of Corrections or Akeela House either the right or the responsibility to confine Beckman in the Akeela House program. The authority of Akeela House to confine Beckman derived exclusively from Beckman's enrollment in the program, not from any order of the court.[5]

■ Certainly, the court's order did expressly require Beckman to complete the Akeela House program. Yet the order did not apply to him unconditionally; it applied only as a condition of probation. Whether or not to participate at Akeela House was a matter for Beckman's decision. As with other conditions of probation, if Beckman was willing to pay the consequences by having his probation revoked and his suspended sentence reinstated, he could elect not to fulfill the Akeela House requirement. The superior court's order modifying probation cannot realistically be construed as an order requiring Beckman to be confined at Akeela House; accordingly, Beckman was not confined in that program "under an order of a court." AS 11.81.-900(b)(34). We thus conclude that Beckman was not in "official detention" under

---

3. In denying Beckman's motion to dismiss, Judge Ripley apparently concluded that, since Beckman was "in custody" for purposes of receiving credit for time served, he fell within the initial portion of AS 11.81.900(b)(34), which states: "'Official detention' means custody, arrest, [or] surrender in lieu of arrest ...." On appeal, however, the state does not argue that Beckman was in "custody" as that word is used in AS 11.81.900(b)(34). "Custody" is not expressly defined in the provisions of Alaska law dealing with escape. However, definitions of "custody" contained in escape statutes from other jurisdictions suggest that, in context, the word is intended to have a narrow meaning, essentially synonymous to "arrest." AS 11.81.-900(b)(34) was based primarily on Missouri Revised Statutes § 556.061(3) (1979). See Alaska Department of Law, Criminal Code Manual, Derivation Table at 4–20 (1979). Under Missouri Revised Statutes § 556.061(6), custody is defined as occurring upon arrest but prior to in-

carceration. See also Arizona Revised Statutes § 13–2501(3) (1978) ("custody means the imposition of actual or constructive restraint pursuant to an on-site arrest or court order but does not include detention in a correctional facility").

4. The court in *Lock* construed former AS 11.05.-040, which provided, in relevant part:

A person who is sentenced shall receive credit towards service of his sentence for time spent in custody pending trial or sentencing, or appeal, if that detention was in connection with the offense for which sentence was imposed.

5. Indeed, since Beckman was released to Akeela House as a condition of probation, it is clear that, absent express statutory authorization, the court lacked authority to require either the Division of Corrections or Akeela House to confine him. *See Boyne v. State*, 586 P.2d 1250 (Alaska 1978); *State v. Walker*, 27 Wash.App. 544, 619 P.2d 699 (1980).

AS 11.81.900(b)(34) and AS 11.56.-310(a)(1)(B).

Our interpretation of AS 11.81.900(b)(34) is bolstered by the legislative history of Alaska's escape statutes and by the general policies underlying release on probation. The escape provisions in three of the criminal codes that Alaska's code was patterned after expressly exclude probationary release from the definition of confinement of custody. *See* Missouri Revised Statutes § 556.061(3) (1979); Model Penal Code § 242.6 (1980); Arizona Revised Statutes § 13–2504(A)(2) (1978). Moreover, prior to enactment of AS 11.81.900(b)(34), "official detention" was defined in AS 11.30.100(2) which included a proviso stating: " 'Official detention' does not include supervision on probation or parole or constraint incidental to release on bail." AS 11.81.900(b)(34) no longer expressly incorporates this exclusion of probationary release. However, both the commentary to the revised criminal code and the commentary to the tentative draft of the revised code state that current Alaska escape statutes were generally intended to parallel previously existing law; there is no indication that the revised code was meant to alter the exclusion of probationary release from the ambit of the escape statutes. *See* Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 44 at 13, 1980 Senate Journal 1437 (May 29, 1980); Alaska Criminal Code Revision Part IV at 46–49 (Tent. Draft 1977).[6]

■ In summary, the superior court issued an order modifying Beckman's probation and, in so doing, unequivocally reinstated Beckman's release on probation. As a condition of probation the court required Beckman to complete the Akeela House program, which constitutes a significant deprivation of his liberty and therefore amounts to "confinement." However, it does not follow that Beckman's "confinement" at Akeela House can be equated with official detention. The superior court's order modifying Beckman's probation did not authorize or direct the Division of Corrections, Akeela House personnel, or any other person to detain or confine Beckman after his release from jail. Under these circumstances Beckman was not confined "under an order of a court." He was on probation, and the appropriate remedy following his departure from Akeela House should have been the revocation of his probation and imposition of the suspended portion of his sentence.

To subject Beckman to a separate charge of escape was inappropriate and contrary to the basic concept of probationary release:

> By its very nature and definition probation means and signifies liberty under certain imposed conditions. Its basic purpose is to provide a program which offers an offender the opportunity to rehabilitate himself without confinement. This is to be accomplished under the tutelage of a probation officer and under the continuing power of the court to impose a sentence for his original offense in the event he abuses his opportunity and violates the conditions of probation.

*Boyne v. State*, 586 P.2d 1250, 1251 (Alaska 1978), quoting *People v. Ledford*, 173 Colo. 194, 477 P.2d 374, 375 (1970).

We hold that Beckman was not under "official detention" when released to the custody of Akeela House.[7] Accordingly,

---

**6.** The commentary to the tentative draft is perhaps most helpful in this regard. It discusses three significant changes to existing Alaska escape law incorporated in the tentative draft, while stating that most provisions of existing law were left substantially intact. The three changes discussed in the commentary do not relate to the question of whether probationary release constitutes "official detention" for purposes of applying the escape statutes. *See* Tentative Draft, Part IV at 43–49. The escape statutes ultimately enacted in the revised code are in substance identical to the preliminary versions contained in the tentative draft.

**7.** The Court of Appeals of the state of Washington, in interpreting statutory provisions similar to Alaska's, recently reached essentially the same conclusion under circumstances highly similar to those of the present case. *State v. Walker*, 27 Wash.App. 544, 619 P.2d 699 (1980).

the superior court erred in denying Beckman's motion to dismiss.

The conviction is REVERSED.