**Sam G. WILLIAMS Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10763.

Court of Appeals of Alaska.

March 22, 2013.

Michael T. Schwaiger, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

COATS, Chief Judge.

After being convicted for a felony, Sam G. Williams Jr. was granted parole. The Parole Board stated that Williams was to reside at a community residential center (CRC) for ninety days. While being transported in a CRC van to the residential center, Williams opened the van door, left the van, and left the area. Based on this conduct, Williams was convicted of escape in the second degree, which is defined as removing oneself from

official detention for a felony without lawful authority.[1]

Williams argues that he did not commit the offense of escape in the second degree because he had been released on parole, and therefore was not in official detention when he left the CRC van. We conclude that Williams was not in official detention when he left the van.

*Factual and procedural background*

Williams was convicted of felony driving while intoxicated in 2001 and 2004. He was initially released on mandatory parole on February 28, 2008. Williams admitted to violating his parole in June 2008. He was placed at the Glenwood Center, a CRC. Williams left the Glenwood Center without his parole officer's permission in July 2008 and was again charged with violating his parole.

Based upon these parole violations, the Alaska Board of Parole revoked Williams's mandatory parole, and Williams was placed in an Anchorage correctional facility. But, effective December 17, 2008, the Board reparoled Williams, subject to the condition that Williams reside at a CRC for ninety days. The Board provided that if Williams was admitted to both mental health treatment and substance abuse treatment, he could be released to an approved residence prior to the end of the ninety days.

Williams remained in the Anchorage correctional facility until December 22, 2008. Williams was supposed to be released to the Parkview Center, but the State mistakenly transferred him first to the Cordova Center. Both the Cordova and Parkview Centers are owned by the Cornell Company, a private company. Williams was transported from the Cordova Center to the Parkview Center in a Cornell Company van. When the van momentarily stopped, Williams opened the door, left the van, and left the area.

On January 13, 2009, Williams was stopped in downtown Anchorage by Officer Eric Nowak. As Nowak approached Williams, Williams stated, "Okay, you got me." Nowak asked Williams for identification and ran a warrant check. After finding an outstanding warrant, Nowak arrested Williams.

Williams was charged and convicted of escape in the second degree, which is defined as removing oneself from official detention for a felony without lawful authority.[2] Official detention is defined as "custody, arrest, surrender in lieu of arrest, or actual or constructive restraint under an order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release."[3] Williams was sentenced to eight years with three years suspended.

*Why we conclude Williams was not in "official detention"*

We conclude that *Beckman v. State,* 689 P.2d 500 (Alaska App.1984) and *Ivie v. State,* 179 P.3d 947 (Alaska App.2008) control the decision in this case. Beckman was sentenced to serve seven years and nine months in prison with five years suspended on a conviction for passing bad checks.[4] Beckman was released on probation and violated his conditions of probation.[5] At a revocation hearing a superior court judge modified the conditions of Beckman's probation and required him to complete an eighteen-month period in a residential alcohol treatment program, Akeela House, a private institution that provided both residential and non-residential drug rehabilitation therapy.[6]

When space became available at Akeela House, a representative of the program went to the jail and obtained Beckman's release to the program. But after Beckman was released, Beckman fled from the Akeela House representative in the parking lot outside the jail.

The State charged Beckman with escape in the second degree and he was convicted of

1. AS 11.56.310(a)(1)(B).

2. AS 11.56.310(a)(1)(B).

3. AS 11.81.900(b)(40).

4. *Beckman,* 689 P.2d at 500.

5. *Id.* at 501.

6. *Id.* at 501 & n. 1.

that charge. On appeal, Beckman claimed that he was not in "official detention" when he fled from the jail parking lot.[7]

We agreed with Beckman's argument. We concluded that, although Beckman was under confinement at Akeela House, he was not confined "under an order of a court."[8] Our reasoning relied on the legislative history of the statutory definition of "official detention."[9] We concluded that, based on that legislative history, the legislature did not intend "official detention" to include supervision on probation or parole.[10] We held that the superior court order modifying Beckman's probation could not "realistically be construed as an order requiring Beckman to be confined at Akeela House."[11] We stated that "[u]nder the terms of the superior court's order modifying Beckman's probation, the Division of Corrections lost custody over Beckman upon his release to Akeela House. Akeela House itself was never ordered to confine Beckman, either directly by the court or indirectly through the Division of Corrections."[12] Therefore, we held that Beckman was not in official detention when he fled.

In *Ivie*, we reached a similar conclusion. After being convicted and serving a sentence of incarceration on a felony charge, Ivie was released on probation. He appeared before the superior court on a petition to revoke his probation. The superior court ruled that Ivie was to be held at the Fairbanks jail until a bed opened up at NorthStar Center, a halfway house.[13] The court stated that if a bed became available at the NorthStar Center, Ivie's "conditions of release [would require him] to take the bed, follow all rules," and if he was "discharged for any reason," he was to be returned to jail.[14]

Ivie was transferred to the NorthStar Center, where he walked away without permission. He was charged and convicted of escape in the second degree. On appeal, Ivie argued that he could not be convicted of escape in the second degree because he was not in "official detention" when he left the NorthStar Center.

We agreed with Ivie and vacated his conviction.[15] We relied on *Beckman* for the proposition that "a person is not guilty of escape just because he leaves confinement. In order for Ivie to be guilty of escape, the court must have ordered the Department of Corrections to confine him, and he must have removed himself from that confinement."[16] We concluded that the superior court order sending Ivie to NorthStar Center was an "order of conditional bail release."[17]

The State concedes that *Beckman* correctly interpreted "official detention" to exclude supervision on probation and parole. But the State argues that while "official detention" does not include general supervision of a defendant who is on parole, it does include genuinely restrictive parole conditions. But the State's argument conflicts with *Beckman* and with the legislative history on which we relied in reaching our conclusion in that case. Furthermore, the State has not articulated any convincing standard for deciding when parole conditions become sufficiently restrictive to constitute escape.

We accordingly conclude that our former decisions in *Beckman* and *Ivie* govern our decision in this case. Based on those decisions, we conclude that Williams was released on parole conditions which required him to reside at Parkview Center, a private CRC. When Williams departed from the van that was taking him to the Parkview Center, he was in violation of his conditions of parole, but he was not in "official detention" while in the van. He therefore could not be convicted

7. *Id.* at 501.

8. *Id.* at 502.

9. *See* AS 11.81.900(b)(40).

10. *Beckman*, 689 P.2d at 503.

11. *Id.*

12. *Id.*

13. *Ivie,* 179 P.3d at 948–49.

14. *Id.* at 949.

15. *Id.* at 951.

16. *Id.* at 950.

17. *Id.*

of escape. Accordingly, Williams's conviction for escape in the second degree is VACATED, and the indictment against him for that charge is dismissed.

MANNHEIMER, Judge, concurring.

Williams, who had just been paroled on condition that he reside at a halfway house designated by the Parole Board, fled from the van that was transporting him to this halfway house. For this act of flight, Williams was charged with second-degree escape under AS 11.56.310(a)(1)(B). To prove this crime, the State had to show that Williams removed himself from official detention for a felony when he had no lawful authority to do so.

Broadly speaking, the issue raised in this appeal is whether Williams was in "official detention" when he fled.

The phrase "official detention" is defined in AS 11.81.900(b)(40) as encompassing "custody, arrest, [or] surrender in lieu of arrest", as well as "actual or constructive restraint under [any] order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release".

The State concedes that the only part of this definition that conceivably applies to Williams's situation is "custody". Thus, the real question is whether a person who has been released from prison on parole, but who has been ordered by the Parole Board to reside at a specific halfway house, remains in "custody" for purposes of the escape statute.

The Alaska Statutes do not contain a pertinent definition of "custody". However, the State takes the position that the core meaning of "custody" is "physical restraint". For this reason, the State concedes that people who have been released from prison on either probation or parole are, generally speaking, not "in custody".

However, the State argues that sometimes, when a person's conditions of probation or parole impose restrictions on the person's residence, or on the person's physical movement (or both), the restrictions can be so broad or extensive that they approximate physical confinement. In such instances, the State contends, the probationer or parolee should be considered to be "in custody" for purposes of the escape statutes.

In essence, the State proposes that this Court adopt the same approach to "custody" (for purposes of the escape statutes) as the approach that this Court adopted in *Nygren v. State* [1] on the question of whether a defendant's conditions of bail release are so restrictive that they should be deemed "incarceration" for purposes of awarding the defendant credit against any subsequently imposed sentence of imprisonment.

But the Alaska Legislature has already declared that it does not want to incorporate the *Nygren* line of cases—more specifically, the *Nygren* approach to "incarceration"—into the escape statutes.

As explained earlier in this concurrence, a charge of second-degree escape requires the State to prove that the defendant unlawfully removed themself from "official detention". And the legislature's definition of "official detention", AS 11.81.900(b)(40), declares that this term does *not* include "order[s] of conditional bail release".

By adding this clause to the definition of "official detention", the legislature essentially declared that it did not want charges of escape to turn on a case-by-case assessment of the nature of a defendant's bail conditions, and whether those conditions were restrictive enough to approximate incarceration.

Because the legislature rejected the *Nygren* approach to bail conditions when it framed the definition of "official detention", I conclude that it would run counter to the legislature's intent for us to adopt the State's current proposal of a *Nygren*-like approach to the definition of "custody" in the context of probation and parole.

For these reasons, I agree with my colleagues that Williams's conviction for second-degree escape should be reversed.

1. 658 P.2d 141, 146 (Alaska App.1983).