Gregory Charles MAYNARD, Appellant,

v.

STATE of Alaska, Appellee.

No. 5501.

Court of Appeals of Alaska.

Oct. 8, 1982.

Dana Fabe, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Elizabeth H. Sheley, Asst. Attys. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Maynard was prosecuted, tried and convicted of felony escape,[1] felony assault,[2] and misdemeanor assault.[3] He has appealed from the resulting conviction. We have reviewed the record and considered the written and oral arguments of the parties, and finding no error, affirm.

Maynard claims four errors: (1) that the trial court abused its discretion in failing to sever the three charges for trial; (2) that the trial court erred in failing to instruct on alleged lesser included offenses of attempted escape and resisting arrest; (3) that the trial court incorrectly instructed the jury regarding the elements of escape; and (4) that the escape statute under which Maynard was prosecuted, AS 11.56.310(a)(1)(B), provides a greater punishment for a predetention escape from custody by one charged with a felony than one charged with a misdemeanor, and therefore violates equal protection.[4]

We will state the relevant facts and then discuss Maynard's claimed errors in the order of their presentation.

During the evening of February 2, 1980, Maynard accosted L.B., a fifteen-year-old female roommate of his friend Larry at Larry's apartment. An argument ensued resulting in Maynard's severely beating L.B. and, apparently, without remonstrance from Larry or others present, dragging her outside where he kicked her a number of times in the face and beat her about the head and body. Maynard thereafter forcibly dragged her to his apartment and continued the beating. L.B., allegedly from fear, remained with him until early the next morning, at which time she made her escape and proceeded to a neighbor's apartment from which she called the police.

Officer Elmo Hill responded to the call, met L.B. at her place of refuge, briefly interviewed her, and proceeded to Maynard's apartment approximately one-and-a-half blocks away, there he was met by other officers in the area on another matter. Maynard, wearing a bloody T-shirt, met the police on his doorstep and immediately turned to proceed back into the apartment with the officers directly behind him. One officer stooped to take a knife from May-

---

1. Former AS 11.56.310 provided in pertinent part:

   *Escape in second degree.* (a) A person commits the crime of escape in the second degree if, without lawful authority, he
   (1) removes himself from ... (B) official detention on a charge of a felony ....

   This statute was changed in 1980 to read, "(1) removes himself from ... (B) official detention *for* a felony ...." (Emphasis added). Senate Journal Supp. No. 44, May 29, 1980, provides in pertinent part:

   Additionally, sections 17–20 replace the words on "a charge of" with the word "for". This amendment is required to make clear that escape and permitting an escape can occur when a person has been arrested for a crime, though not necessarily formally charged with a crime by way of complaint, indictment or information.

   We are satisfied that the amendment clarifies rather than changes the meaning of the statute under which Maynard was convicted. The officers arresting Maynard had probable cause to believe he had committed a felony. Conse-

quently, we hold that at the time he escaped, Maynard was officially detained "on a charge of a felony."

2. Former AS 11.41.210(a)(2) provided that "a person commits the crime of assault in the second degree if ... (2) he intentionally places another person in fear of imminent serious physical injury by means of a dangerous instrument ...." This section was repealed in 1980. The conduct prohibited is now covered by AS 11.41.220 which reduces it from a class B to a class C felony.

3. Former AS 11.41.230(a)(1) provided: "A person commits the crime of assault in the third degree if he intentionally or recklessly causes physical injury to another person ...."

4. The fourteenth amendment to the United States Constitution prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." Alaska Constitution art. 1, § 1 contains a similar provision.

nard's boot, at which time Maynard drew a "machete" from his waistband and swung it at Officer Hill's face. The officers drew their guns and disarmed Maynard. Hill briefly left Maynard in the custody of the other officers while he completed his interview with L.B. When he returned he formally arrested Maynard and, after a brief struggle, succeeded in handcuffing him. Maynard continued to struggle while being escorted to a waiting police car, where he succeeded in breaking away from the officers and running away with Officer Shore in fast pursuit. Maynard ran for about two blocks, successfully keeping a distance of approximately twenty-five feet between himself and Shore, while Hill followed in the police vehicle. Maynard eventually stopped to taunt Shore, at which time Shore and the arriving Hill grabbed him and succeeded in forcing him into the police car and transporting him to jail.

## SEVERANCE

Maynard argues that he should have had separate trials regarding (1) the assault on L.B., (2) the "machete" assault on Hill, and (3) his "escape" from Hill and Shore. He does not allege any specific prejudice from the combined trial, other than that which naturally flows from facing three charges at once. Criminal Rule 8(a) permits consolidation of two or more offenses for trial if they "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." If, however, it appears that the defendant is "prejudiced by a joinder of offenses ... in an indictment ..., the court may order an election or separate trials of counts ..., or provide whatever other relief justice requires." Alaska R.Crim.P. 14.

■ Where the trial court has made a decision to deny severance under Rule 14, this court may overturn it only if it finds an abuse of discretion. *Catlett v. State,* 585 P.2d 553, 556 (Alaska 1978); *Stevens v. State,* 582 P.2d 621, 628 (Alaska 1978); *Richards v. State,* 451 P.2d 359, 361–62 (Alaska 1969).

■ Here all charges grew out of a related series of events, and the trial court could well have anticipated that much of the evidence offered in support of one count would be relevant to the others. Certainly Maynard's altercation with L.B. would explain the police officers presence on his porch, and give some insight into his state of mind in swinging a machete at Hill, and later running off from Hill and Shore. Under these circumstances, evidence of each incident would be admitted at the trial of each of the others even if the incidents were tried separately. Therefore the public interest in avoiding duplicative trials could be found to outweigh any possible prejudice from a combined trial. *Catlett v. State,* 585 P.2d at 556. *See Nell v. State,* 642 P.2d 1361, 1363–65 (Alaska App.1982).

Maynard mistakenly relies on dicta in *Stevens,* 582 P.2d at 629. There the supreme court suggested that where joinder was predicated solely on similarity of otherwise unrelated offenses, severance should be granted, unless evidence of each would be admissible at trial of the others under Alaska Evidence Rule 404. Here, the offenses grow out of a sequence of interrelated transactions where each serves to explain and render intelligible the others. *See Braham v. State,* 571 P.2d 631, 640 (Alaska 1977), *cert. denied,* 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978). In Maynard's case the witnesses, in testifying about one incident, would necessarily disclose the others. *McKee v. State,* 488 P.2d 1039, 1041 (Alaska 1971); *Kugzruk v. State,* 436 P.2d 962, 967 (Alaska 1968).

## LESSER INCLUDED OFFENSES

■ If there is evidence from which the jury could find a defendant guilty of a lesser included offense, instead of the offense charged, under the cognate approach defined and adopted in *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979), then failure to instruct on the lesser offense is error requiring a new trial. We conclude that resisting arrest and attempted escape are not lesser included offenses of the escape charged in this case. Testimony as to May-

nard's conduct was consistent and uncontroverted. Maynard's claims, then, turn on a question of law, not fact: the meaning of "escape."

AS 11.56.310(a)(1)(B) defines escape as "Remov[ing oneself] from . . . official detention." Official detention is defined as, "custody, arrest, surrender in lieu of arrest, or confinement under an order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release." AS 11.81.900(a)(34).

Maynard argues that an escape is not complete so long as a defendant is under the surveillance of police officers or so long as officers are in hot pursuit. Consequently, he concludes, since the evidence establishes that Maynard was always in Shores' sight, a jury could have found him to be guilty only of attempted escape or resisting arrest. We disagree. The offense of escape is complete when a person once in lawful custody, voluntarily removes himself from that custody without lawful authority. Once arrested, Maynard was obligated to remain in the immediate presence of the officers arresting him, and subject to their control.[5] Thus, given the undisputed evidence that Maynard had already been arrested when he broke and ran,[6] and that he

---

**5.** There is no dispute that Maynard was arrested inside his dwelling, and after leaving the dwelling with the officers he broke away and ran; he alleges no justification. He seems to be confused as to the meaning of "official detention", *i.e.,* the legal limits of confinement that exist when one is arrested but not yet incarcerated. *See* AS 11.81.900(a)(34). Perkins suggests:

> The physical act of the crime of escape is the departure of the prisoner which ordinarily is clear enough. A convict who refuses to work or is otherwise insubordinate or refractory may be punished by prison officials but cannot be convicted of an escape because there is no departure by him. On the other hand, a prisoner who goes beyond the prison walls unlawfully, with intent to keep going, is guilty of escape although immediately recaptured, and a prisoner may be guilty of an escape from his cell although unable to get beyond the prison walls. In other words the limits within which a prisoner may be required ·by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, *the immediate presence of his guard on the street or elsewhere,* the general area of a project on which he is working such as a road job, or some other. Whatever the limits may be for him at the time a departure therefrom is the physical part of an escape.

R. Perkins, Criminal Law 504 (2d ed. 1969) (emphasis supplied) (citations omitted).

**6.** AS 12.25.160 defines arrest as, "the taking of a person into custody in order that he may be held to answer for the commission of a crime." Perkins distinguishes between resisting arrest and escape in the following way:

> Escape and the kindred offenses are clearly in the nature of obstructions of justice but they have been dealt with so commonly as distinct crimes that it seems wise to treat them as such. And before any effort to explore this field is attempted a clarification of terms is needed. The word 'escape' is used in two different senses in regard to the factual occurrence indicated, and in two (or more) different senses in its use as the name of a crime. In the technical sense an 'escape' is an unauthorized departure from legal custody; in a loose sense the word is used to indicate either such an unlawful departure or an avoidance of capture. And while the word is regularly used by the layman in the broader sense it usually is limited to the narrower meaning when used in the law,—although this is not always so. It is employed in this subsection exclusively in the technical sense. Thus if an officer approaches an offender for the purpose of making an arrest, which he is unable to do because the other eludes him by running away, there has been no 'escape' as the term is used here. It is necessary, however, to bear in mind that 'arrest' also is a technical term. If an officer having authority to make an arrest actually touches his arrestee, for the manifested purpose of apprehending him, the arrest is complete 'although he does not succeed in stopping or holding him even for an instant'. In such a case there is legal custody of the arrestee for an instant although the imprisonment is constructive rather than effective. Hence there would be an escape, if such an arrestee ran away after being touched by the officer with appropriate words of arrest and lawful authority for this purpose.

R. Perkins, Criminal Law 500 (2d ed. 1969) (citations omitted).

Thus we conclude, once an arrest is made, as indisputably one was made here, *any* flight is escape, not resisting arrest or attempted escape. We recognize that the language in our escape statute was taken in part from the Model Penal Code. We have examined the commentary to that code and we are satisfied that the distinction we draw between resisting arrest and escape is consistent with the definitions given those offenses in the Model Penal

succeeded in evading Shore for two blocks, we conclude that Maynard could only be convicted of escape or acquitted.[7] He could not be convicted of resisting arrest or attempted escape.

## OTHER JURY INSTRUCTIONS

■ As previously discussed, one who voluntarily removes himself from official detention is guilty of escape. AS 11.56.-310(a)(1)(B). "Removes" is not further defined in the statutes. The trial court instructed the jury that remove meant "to change in location, to move." Maynard contends that this instruction constituted prejudicial error. We disagree.

■ We find no error in the trial court's definition of "remove" as, "to change in location, to move," when read with the other instructions which required the jury to find that Maynard removed himself from official detention which in context we conclude meant the immediate presence of the arresting officers. The court properly denied Maynard a specific intent instruction. See Alex v. State, 484 P.2d 677, 681 (Alaska 1971); R. Perkins Criminal Law 500–01 (2d ed. 1969). The trial court should have instructed the jury on general criminal intent but it did not. This failure is conceded error, but we believe, in context, that the error was harmless. The jury was told that the charge read "Maynard did knowingly and without lawful authority remove himself from official detention." Immediately thereafter, the jury was told that the elements of the crime of escape required inter alia that "Maynard . . . did remove himself . . . from official detention . . . without lawful authority." If there was some evidence from which a jury could infer mis-

take or confusion as to the arrest or the limits of custody on Maynard's part, we might find prejudice, but there is no such evidence. Consequently, we conclude, in light of the evidence presented, that a jury following the instructions would not have convicted if the jury had a reasonable doubt that he voluntarily ran away from Hill and Shore. In light of the evidence, we do not believe that further instructions on intent would have substantially affected the jury's verdict, consequently any error in failing to instruct on general intent was harmless. See Love v. State, 457 P.2d 622, 629–32 (Alaska 1969). Assuming, but not deciding, that an issue relating to instructions on intent might raise constitutional questions of due process, we are equally convinced, in the context of this case, that failure to specifically instruct on general intent was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Maynard's final claim is that AS 11.-56.310(a)(1)(B) is unconstitutional when read in conjunction with AS 11.56.330. AS 11.56.310(a)(1)(B) defines departure from official detention as escape in the second degree, a felony, where detention is on a charge of felony. On the other hand, AS 11.56.330 makes escape a misdemeanor where the charge for which defendant is initially detained is a misdemeanor. Maynard's arguments are similar to those presented to the court and rejected in Alex v. State, 484 P.2d 677, 684–86 (Alaska 1971). He attempts to distinguish Alex on a number of grounds arguing: (1) that the precise statute under consideration in Alex governed escape from a correctional institution,

Code. See Model Penal Code § 242.2, Resisting Arrest, and § 242.6, Escape, and accompanying commentary (1980).

7. Since Maynard was under arrest, any voluntary departure from the arresting officers' immediate presence without their consent was an escape; this would be true even if he had been recaptured almost immediately. See n. 6, supra. See also People v. Quijada, 53 Cal.App. 39, 199 P. 854 (1921) and State v. Bryant, 25 Wash.App. 635, 608 P.2d 1261 (1980); cf. Ford v. State, 237 Md. 266, 205 A.2d 809 (1965)

(defendant on trial properly convicted of escape where he fled the courtroom and was shortly thereafter recaptured within the courthouse). Maynard may be arguing, by analogy to larceny, that an intentional departure from custody would only be an escape if the person departing intended to permanently deprive the police of his custody. If so, Maynard is in error. A voluntary though temporary departure from lawful custody is an escape, even though the escapee intends to return shortly.

while current law makes escape from such an institution a felony whether the convict is a felon or misdemeanant; (2) that the supreme court in *Isakson v. Rickey,* 550 P.2d 359, 362–63 (Alaska 1976), adopted a more restrictive theory of equal protection under which it is more willing to set aside statutes on equal protection grounds than it was at the time that *Alex* was decided; (3) that it is less rational to differentiate between people charged respectively with felonies and misdemeanors as in Maynard's case, than between those convicted of felonies and misdemeanors, as was the case in *Alex;* and (4) that a felon with prior felony convictions but not a misdemeanant with prior felony convictions is subject to presumptive sentencing which substantially curtails judicial discretion to fit the punishment to the crime. Such discretion was arguably a factor significant to the *Alex* court. *See Alex v. State,* 484 P.2d at 686.

We have considered each of these arguments and find them, whether considered singly or in total, insufficient to justify invalidating the statute punishing second degree escape on equal protection grounds. In most cases one arrested for a felony will face a greater potential penalty and will therefore have a greater incentive to escape and seek to avoid recapture than one arrested for a misdemeanor, and consequently the legislature could reasonably conclude that a greater potential sentence is needed for deterrence. A court sitting in a democracy should be extremely hesitant to invalidate on constitutional grounds a statute carefully considered and adopted by the state legislature. That hesitation should increase where a prior decision of our state's highest court has validated a similar statute against a similar constitutional challenge especially when the constitution has not been amended in the interim. We have carefully considered the *Alex* decision in light of Maynard's arguments and cannot, on reflection, say that any event occurring since its announcement would warrant us in disregarding it as persuasive authority. Consequently, we conclude the statute attacked is constitutional and Maynard's conviction valid.

The judgment of the superior court is AFFIRMED.