David W. JACOBSON, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–2217, A–2218.

Court of Appeals of Alaska.

Jan. 26, 1990.

Margaret W. Berck, Asst. Public Defender, Juneau, and John B. Salemi, Acting Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

David W. Jacobson was convicted of theft in the second degree, burglary in the second degree, escape in the second degree, and misconduct involving a weapon in the first degree. Superior Court Judge Rodger W. Pegues sentenced Jacobson to an aggregate term of seven years. Jacobson appeals, contending that the superior court erred in failing to suppress evidence that resulted from an unlawful search and seizure, in failing to dismiss the charges of escape and misconduct involving weapons, in denying his motion for a mistrial, and in admitting evidence of prior misconduct. Jacobson also challenges his sentence as excessive. We affirm the convictions for theft and burglary, reverse the conviction for misconduct involving a weapon, and

remand for additional findings on the escape charge.

## FACTS

On November 1, 1986, the Juneau police were called to investigate a possible burglary at an office building. Upon entering the building, a police officer encountered Jacobson. Jacobson ran but was apprehended a short distance away. As the officer led him back, Jacobson attempted to flee. He was subdued, handcuffed to a carport post outside the building, and given *Miranda* warnings. Jacobson asked what he was charged with and was told that the police were "considering burglary."

A short time later, Jacobson managed to extricate one of his hands. He fled and avoided capture by swimming across a creek. Pursuing officers located Jacobson in a nearby motel room. They entered the room and placed him under arrest.

The police seized Jacobson's personal belongings from the motel room when they arrested him. After taking the property to the police station, they inventoried the items that had been in open view at the motel room but did not open or search a knapsack and bank bag that had been closed. When the inventory disclosed items of jewelry that appeared to be stolen, the police obtained a warrant authorizing a search of all of Jacobson's personal belongings. Various stolen items were seized in the course of the search. In addition, the police seized a butterfly knife that had been in Jacobson's possession at the motel room.

Jacobson was charged with burglary, theft, and escape. For his possession of the butterfly knife, he was charged with misconduct involving a weapon. Jacobson received separate jury trials before Superior Court Judge Rodger W. Pegues on the theft and burglary charges. The escape and weapons misconduct charges were joined for trial without a jury before Superior Court Judge Walter Carpeneti. After being convicted on all counts, Jacobson's cases were consolidated for sentencing. Judge Pegues imposed partially consecutive sentences totaling seven years' imprisonment and specified that Jacobson would not be eligible for early release on parole.

## SEARCH AND SEIZURE

On appeal, Jacobson contends that the superior court erred in denying his motion to suppress evidence, which challenged the warrantless police inventory of his personal property. After conducting an evidentiary hearing, Judge Carpeneti upheld the inventory, finding that it was performed for legitimate purposes and did not exceed the permissible limits set out in *Reeves v. State*, 599 P.2d 727, 736–38 (Alaska 1979).

■ The court's decision must be upheld unless clearly erroneous. *State v. Bianchi*, 761 P.2d 127, 129–30 (Alaska App. 1988). Jacobson argues that the police were not authorized to open various closed containers for purposes of conducting the inventory. However, the only containers the police opened were those that they themselves had packed and closed while seizing Jacobson's belongings from the motel room. Those containers, such as Jacobson's shaving kit and grocery bags of clothing, contained items that were in plain view when they were seized. The police had a legitimate interest in protecting themselves against potential claims for loss by inventorying these items. The inventory did not impermissibly encroach on Jacobson's privacy rights. *See, e.g., Griffith v. State*, 578 P.2d 578, 580 (Alaska 1978).

■ Jacobson also complains that the police continued to inventory his property even after they recognized items that were apparently stolen. In Jacobson's view, the fact that the police persisted in inspecting his belongings after deciding to apply for a warrant casts doubt on whether their actual purpose was to conduct an inventory. As correctly recognized by the superior court, however, even after the police decided to seek a warrant, they continued to have a legitimate interest in performing an inventory. Their continuation of the inventory does not establish an improper motive.

The superior court did not err in denying Jacobson's motion to suppress.[1]

## MISCONDUCT INVOLVING WEAPONS

■ Jacobson next challenges his conviction for misconduct involving a weapon in the first degree. Jacobson was convicted of the offense under AS 11.61.200(a)(3), which prohibits, *inter alia,* possession of a "prohibited weapon." The term "prohibited weapon" is defined in AS 11.61.-200(e)(1)(D) to include a "switchblade or gravity knife." The state's theory in charging Jacobson was that the butterfly knife found in his motel room was a gravity knife. On appeal, Jacobson argues that the statutory prohibition against possessing "prohibited weapons" is impermissibly vague. We need not decide this issue. In *State v. Strange,* 785 P.2d 563, (Alaska App.1990), we held that a butterfly knife is not a "switchblade or gravity knife" and therefore does not qualify as a prohibited weapon. Our *Strange* holding requires that Jacobson's conviction for misconduct involving a weapon must be vacated.

## ESCAPE

■ Jacobson was convicted of escape in the second degree in violation of AS 11.56.310. The statute provides, in relevant part, that "[o]ne commits the crime of escape in the second degree if, without lawful authority, one removes oneself from ... official detention for a felony...." As defined in AS 11.81.900(b)(34), "official detention" means "custody, arrest, surrender in lieu of arrest, or confinement under an order of a court...."

At trial, Jacobson maintained that he had not yet been formally arrested when he removed his handcuffs and eluded the police. Jacobson argued that he was therefore not under "official detention for a felony." In finding Jacobson guilty of escape, Judge Carpeneti did not find it necessary to determine whether Jacobson had been arrested. Instead, the judge found that a person who has been subjected to an investigative stop is in "custody" and therefore under "official detention" for purposes of the escape statute, even if the stop did not rise to the level of a full arrest. Finding that, at the very least, Jacobson had been subjected to an investigative stop for a possible burglary, Judge Carpeneti concluded that he was "under official detention for a felony" when he eluded the police.

The issue presented on appeal is thus whether "custody" as used in the statutory definition of "official detention" occurs when an individual is subjected to an investigative stop that falls short of a full arrest. Jacobson argues, as he did below, that he could not have been in "custody" for purposes of the escape statute without first being placed under arrest. Jacobson's argument finds support in *Beckman v. State,* 689 P.2d 500 (Alaska App. 1984). In *Beckman,* we adopted a narrow reading of the word "custody" as used in connection with Alaska's escape statute:

> "Custody" is not expressly defined in the provisions of Alaska law dealing with escape. However, definitions of "custody" contained in escape statutes from other jurisdictions suggest that, in context, the word is intended to have a narrow meaning, essentially synonymous to "arrest."

*Id.* at 502 n. 3 (citations omitted).

In considering the applicability of *Beckman* to the present case Judge Carpeneti noted that *Beckman* appeared to be incorrect in pinpointing the source of Alaska's escape statute. In our discussion of the term "custody" in *Beckman,* we mistakenly indicated that Alaska's definition of "official detention" was derived from Missouri Revised Statute § 556.061(3) (1979). This error stemmed from the fact that the derivation table of the Alaska Department of Law's Criminal Law Manual (Manual) listed the Missouri statute in connection with

---

**1.** Jacobson further challenges as impermissible the warrantless seizure of property from his motel room. He did not raise this argument below, however, and we find no exceptional circumstances to justify consideration of the issue as a matter of plain error. *See Moreau v. State,* 588 P.2d 275, 279–81 (Alaska 1978).

Alaska's definition of "official detention."[2] Judge Carpeneti correctly recognized that the Manual's derivation table was not meant to reflect the actual derivation of statutes included in Alaska's Revised Criminal Code. Rather, the table was compiled after the adoption of the revised code and was intended only as a guide to statutory provisions in other jurisdictions that are similar to those in Alaska's code. For the actual derivation of provisions contained in the revised code, the derivation table refers its readers to the Tentative Draft of the Revised Criminal Code that was prepared by the Criminal Law Revision Subcommission (Subcommission).[3] Relying in part on his conclusion that *Beckman* was mistaken as to the source of Alaska's escape statute, Judge Carpeneti declined to follow the narrow interpretation of "custody" that we adopted in that case.

*Beckman*'s mistake in attributing the origin of Alaska's escape statute to Missouri law has no bearing, however, on the validity of the narrow reading that we gave to the word "custody" in that case. Nothing in the actual history of Alaska's escape statute points to the appropriateness of a broader reading of the word. In fact, the contrary conclusion seems indicated.

Alaska's escape statute was adopted almost verbatim from the escape provision proposed by the Subcommission in its Tentative Draft. *See* Alaska Criminal Code Revision, Part IV, 46–49 (Tent. Draft 1977). The Subcommission, in turn, indicated that the Tentative Draft provision was based largely on then existing Alaska law. *Id.*

When the Subcommission issued the Tentative Draft, Alaska's escape statute provided, in relevant part, that "a person commits an escape if without lawful authority he ... wilfully removes himself from official detention...." *See* former AS 11.30.-090 (ch. 171, § 1, SLA 1976). The term "official detention" was defined in former AS 11.30.100(2) (ch. 171, § 3, SLA 1976) as follows:

"Official detention" means arrest, custody following surrender in lieu of arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or to be delinquent, detention for extradition or deportation or any other detention for law enforcement purposes; but "official detention" does not include supervision on probation or parole, or constraint incidental to release on bail.

Under this statutory definition, it seems clear that "official detention" did not include the type of restraint inherent in a pre-arrest investigative stop.

Although the definition of "official detention" contained in the Tentative Draft differed somewhat from that set out in former AS 11.30.090, nothing in the Tentative Draft's commentary indicated that the changes in wording were intended to alter the substance of the existing definition in any way material to this case. In its commentary, the Subcommission described three significant ways in which the Tentative Draft's proposed escape provisions differed from then existing law. The description contains no mention of broadening the concept of "official detention" to include pre-arrest investigative stops. At least in the Subcommission's view, the definition of "official detention" embodied in the Tentative Draft (which was ultimately adopted as AS 11.81.900(b)(34)) was in substance identical to that contained in former AS 11.30.100(2).

Subsequent legislative commentary is also relevant. As enacted by the legislature in 1978, the Revised Criminal Code's second-degree escape statute made it unlawful to remove oneself from "official detention *on a charge of* a felony...." Former AS 11.56.310(a)(1)(B) (ch. 166, § 6, SLA 1978) (emphasis added). This language

---

**2.** *See* Alaska Department of Law, Criminal Code Manual, derivation table at 6—41 (1985).

**3.** *Id.* at 6—1–2 (emphasis in original):
It should be noted that the derivation listing was compiled by the criminal division of the Department of Law *after* enactment of the revised code. Statutes from other jurisdictions that were actually considered by the criminal law revision subcommission are set out in a table appearing as an appendix to each volume of the six part tentative draft of the code published by the subcommission.

**392**

drew verbatim from the Tentative Draft, as well as from former AS 11.30.090(b)(1)—the statute in effect when the revised Alaska Criminal Code was adopted. In 1980, however, the legislature amended the second-degree escape statute to its current form, making it unlawful to remove oneself from "official detention *for* a felony." AS 11.56.310(a)(1)(B) (emphasis added).

The legislature explained its substitution of "for a felony" for "on a charge of a felony" as follows:

> This amendment is required to make clear that escape and permitting an escape can occur when a person has been arrested for a crime, though not necessarily formally charged with a crime by way of complaint, indictment or information.

Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 44 at 13, 1980 Senate Journal 1436. This commentary is telling. In stating that the amended statute would permit the prosecution of persons "arrested for a crime, though not necessarily formally charged ...," the legislature clearly indicated its view that, even under the amended version of the statute, an arrest was still necessary before escape could properly be charged.

In the present case, the state has cited no escape statutes or cases from other jurisdictions defining "custody" or "official detention" to include an investigative stop falling short of an actual arrest. Nor are we aware of any such authority. Our own brief survey of escape statutes indicates that other jurisdictions uniformly construe custody to begin with arrest or surrender in lieu of arrest.[4] While some jurisdictions have specific statutory provisions expressly defining custody as beginning at the point of formal arrest, others appear to reach the same conclusion without any express statutory definition. For example, in *State v. Blaine*, 133 Vt. 345, 341 A.2d 16, 17–20 (1975), the Supreme Court of Vermont considered a case prosecuted under former 13 V.S.A. § 1501, which prohibited "escape from lawful custody of a police officer." *Id.* 341 A.2d at 18. Although Vermont's escape statute apparently did not expressly define custody, the court in *Blaine* rejected the prosecution's contention that "custody" could be found in situations involving detention or restraint falling short of actual arrest. The court concluded that "lawful custody does not exist until the arrest is made." *Id.* 341 A.2d at 20.

In short, there appears to be no support in the history of Alaska's escape statute or in the law of other jurisdictions for the conclusion that *Beckman* was incorrect in concluding that "custody" is "essentially synonymous to 'arrest.'" *Beckman*, 689 P.2d at 502 n. 3.

In rejecting the conclusion we reached in *Beckman*, Judge Carpeneti also reasoned that the statutory definition of "official detention" would not have separately included "custody" and "arrest" if both words meant precisely the same thing. The court's concern seems well-founded, since every word used in a statutory provision is presumed to have been intended to have some useful purpose. *See, e.g., Alaska Transportation Commission v. Airpac, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984). However, the narrow interpretation of "custody" we adopted in *Beckman* does not render the word superfluous as used in the statutory definition of "official detention."

Alaska Statute 11.81.900(b)(34) uses four separate terms to define "official detention": "custody, arrest, surrender in lieu of arrest, or confinement under an order of a

---

**4.** The Model Penal Code § 242.6 at 216 states that "'[o]fficial detention' means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent...." *See also* N.Y. Penal Law § 205.00 (McKinney 1988), defining custody as "restraint by a public servant pursuant to an authorized arrest or an order of a court"; Or.Rev.Stat. § 162.135 (1987) defining custody as "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order...."; Tex.Penal Code Ann. § 38.07 (Vernon 1974), applying escape statute to "[a] person arrested for, charged with, or convicted of...."; Utah Code Ann. § 76–8–309 (1978), defines "official custody" to mean "arrest, custody in a penal institution...."; Wash. Rev.Code § 9A.76.120 (1988), applying second-degree escape statute to persons "charged with a felony."

court...." Of the four statutory terms, "arrest" and "surrender in lieu of arrest" involve discrete events of relatively brief duration. The remaining two terms, "custody" and "confinement under an order of a court," describe circumstances that are continuing in nature rather than fixed in time.

Once the police have completed arresting a person or once a person has surrendered in lieu of being arrested, that person typically remains in post-arrest detention pending the filing and disposition of charges or release on bail. In some situations, such as when an arrest is made pursuant to an outstanding warrant, the arrested person will be in "confinement under an order of a court" from the time the arrest is completed. In other situations, however, as when the police make a warrantless arrest at the scene of a crime, a period of post-arrest detention and confinement will ensue during which no charge will have been filed and no court order will have been issued to confine the arrested person. In such situations, the arrested person will nonetheless still be in "custody" and will therefore continue to be in "official detention" and subject to the penalties prescribed in the escape statute.

Thus, although "custody" and "arrest" are essentially synonymous insofar as they refer to the inception of "official detention" for purposes of the escape statute, "custody" is the broader of the two terms and encompasses post-arrest restraint. The legislature's use of the word "custody" in the definition of "official detention" is not inconsistent with the narrow interpretation we adopted in *Beckman*.[5]

In deciding to adhere to the narrow interpretation of "custody" that we adopted in *Beckman*, we are particularly concerned

that serious practical problems might arise if our escape statute were extended to all persons who are subjected to investigative stops. All but the most casual encounters between citizens and police officers may be characterized as stops involving some degree of restraint or deprivation of liberty. *See, e.g., Waring v. State*, 670 P.2d 357, 363–66 (Alaska 1983); *Howard v. State*, 664 P.2d 603, 607–11 (Alaska App.1983). Under the view adopted by the trial court, most if not all such situations would involve "official detention" for purposes of the escape statute. In many cases, moreover, the stops would be based only on reasonable suspicion. The low quantum of evidence needed to effect an investigative stop would make it difficult to say with any degree of confidence whether the stop was "for a felony." Presumably, in all situations where the possibility of a felony had not yet been ruled out, the stop could be characterized as "official detention for a felony" and could serve as a basis for a second-degree escape charge.

We have found no authority to support such a sweeping interpretation of Alaska's escape statute. Accordingly, we conclude that the trial court erred in construing "official detention," as used in AS 11.56.310, to apply to investigative stops. In keeping with the position we adopted in *Beckman*, we hold that "custody," as used in AS 11.81.900(b)(34), begins upon arrest[6] or surrender in lieu of arrest.

In the present case, Judge Carpeneti found it unnecessary to decide whether Jacobson had actually been arrested at the time he fled. Our conclusion that an arrest was a necessary predicate for an escape conviction requires us to remand this case to Judge Carpeneti for specific resolution of the issue.

---

5. Another concern voiced by Judge Carpeneti was that *Beckman*'s narrow construction of "custody" might encourage persons who are subjected to investigative stops to resist. This concern, however, seems unfounded. Those who resist or fail to cooperate with the police before being arrested are subject to sanctions other than prosecution for escape. *See, e.g.*, AS 11.56.700 (resisting arrest); AS 11.56.720 (refusing to assist a police officer). The issue is not whether such conduct is encouraged, but

rather the level of sanction that the legislature intended to apply.

6. By "arrest" we refer to the statutory definition of the term. Under AS 12.25.160, "[a]rrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime." *See also Nome v. Ailak,* 570 P.2d 162, 167–69 (Alaska 1977).

If, after considering the evidence presented at trial, the judge finds beyond a reasonable doubt that Jacobson was under arrest and acted with the requisite culpable mental state, the judgment of conviction for escape may be left intact. If, on the other hand, the judge finds a reasonable doubt as to whether Jacobson was actually under arrest or acted with the applicable culpable mental state, a judgment of acquittal must be entered. We will retain jurisdiction over the appeal pending the resolution of this issue on remand.[7]

7. Because an acquittal on the escape charge would significantly affect Jacobson's composite sentence, we find it preferable not to address Jacobson's sentencing arguments until completion of proceedings on remand. In addition to his sentencing arguments, Jacobson has raised two issues that require only brief consideration.

First, Jacobson argues that the trial court erred in denying a motion for mistrial that he made because members of his jury saw him in the custody of an officer and in close proximity to uniformed guards during the trial. We have consistently held, however, that neither the presence of guards nor a brief, inadvertent view of the defendant in custody is necessarily so prejudicial as to require a mistrial. *See, e.g., Hines v. State,* 703 P.2d 1175, 1178 (Alaska App. 1985); *Dunn v. State,* 653 P.2d 1071, 1086 (Alaska App.1982). The decision whether to grant a motion for a mistrial is consigned to the sound discretion of the trial court. *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). Our review of the record in this case convinces us that the court did not abuse its discretion in denying Jacobson's motion for a mistrial in this case.

The convictions for burglary and theft are AFFIRMED. The conviction for misconduct involving a weapon is VACATED. This case is REMANDED for further findings on the escape charge.

Second, Jacobson contends that the trial court erred in admitting evidence of other crimes during his burglary trial. Jacobson was charged with burglarizing one of several offices in an office building. The trial court allowed the state to admit evidence that property stolen from another office in the same building was found in Jacobson's possession. Jacobson contends that the challenged evidence was inadmissible under Alaska Rule of Evidence 404(b). We disagree. The challenged evidence was integrally related in time and circumstance to the crime with which Jacobson was charged and was highly relevant to discredit Jacobson's claim of mistake. Under the circumstances, the challenged evidence had legitimate relevance on an issue other than Jacobson's propensity to commit crime, and the trial court could readily find that its probative value substantially outweighed its potential for prejudice. *See Kugzruk v. State,* 436 P.2d 962, 966–68 (Alaska 1968). We find no abuse of discretion.