**Christopher HUBBARD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3025.**

Court of Appeals of Alaska.

Nov. 16, 1990.

Jacqueline Bressers, Asst. Public Defender, John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and CUTLER, Superior Court Judge.*

COATS, Judge.

Christopher Hubbard was convicted by a jury of escape in the second degree, a class B felony. AS 11.56.310(a)(1)(B). Hubbard appeals his conviction, arguing that the trial court erred by refusing to dismiss the indictment against him because the evidence which the state presented did not establish that he was "in custody" at the time of the alleged escape. We agree with Hubbard and reverse his conviction.

In September 1988, Christopher Hubbard was charged with theft in the second degree and was released on bail. On September 20, 1988, Hubbard appeared for a preindictment hearing before District Court Judge Elaine Andrews. Hubbard sat in the back of the courtroom; and his attorney sat at defense counsel's table.

At the hearing, the prosecutor alleged that Hubbard had violated the conditions of bail by not remaining within the custody of his third-party custodian. He explained

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

that within hours of being released on bail, Hubbard was rearrested on city charges: driving without a valid operator's license, giving false information to a police officer, resisting arrest, and carrying a concealed weapon. The prosecutor claimed that Hubbard was not in the presence of a third-party custodian at the time of the second arrest. Apparently he was re-released on bail after the second arrest. Hubbard's attorney claimed that Hubbard had not violated the conditions of his original bail—he told the court that when Hubbard was rearrested, he was on his way to get married, and one of the third-party custodians had been driving the car behind him.

The court responded as follows:

Well, I think at this stage Mr. Hubbard will be remanded and we can set on a bail hearing ... Mr. Hubbard can take a seat in the jury box because he's gonna be in custody while we decide what happens here.

Judge Andrews then set bail at $10,000, and asked, "Mr. Hubbard, do you want to come forward and take a seat in the jury box?" Hubbard did not take a seat in the jury box; he instead left the courtroom while the parties were scheduling his bail review hearing. Judge Andrews called out to Hubbard as he left, but he did not respond. Judge Andrews then issued an arrest warrant and set bail at $20,000.

Hubbard was indicted for escape in the second degree in violation of AS 11.56.-310(a)(1)(B). The indictment charged that Hubbard

knowingly and without lawful authority remove[d] himself from the State of Alaska Court Building while under official detention for a felony offense.

Hubbard moved to dismiss the indictment, arguing that he was not under "official detention" when he left the courtroom. The motion was denied. The case proceeded to trial before Judge Katz on the escape charge. The underlying charge for theft in

the second degree, for which Hubbard had been initially released on bail, was dismissed.

At trial, after the state rested its case, Hubbard moved for judgment of acquittal on the ground that the state had not established that he was in "official detention" when he left the courtroom. This motion was also denied.

Hubbard challenges the indictment which charged him with escape in the second degree under AS 11.56.310(a)(1)(B). The statute states:

(a) One commits the crime of escape in the second degree if, without lawful authority, one

(1) removes oneself from

(B) official detention for a felony

...

Official detention is defined in AS 11.81.-900(b)(34) as:

custody, arrest, surrender in lieu of arrest, or confinement under an order of a court in a criminal or juvenile proceedings, other than an order of conditional bail release.

The question which this case presents is whether Judge Andrews' statement, "Mr. Hubbard, do you want to come forward and take a seat in the jury box" was sufficient to create an "official detention" pursuant to AS 11.81.900(b)(34). Hubbard argues that he was not in official detention because he was never under any physical restraint before he left the courtroom. The state contends that Hubbard's construction of the statute is too narrow. The state concedes that some kind of physical contact is necessary to effectuate an arrest, but it argues that a mere order from the court can trigger "custody" and "confinement under an order of a court." The statutes do not define the terms, "custody" and "confinement under an order of the court."[1]

In previous decisions, we have held that before a person was in "official detention" for purposes of the escape statute, the

---

1. Hubbard argues that he was released on bail at the time of his alleged escape and therefore his actions were not covered by the escape statute. We assume, for purposes of this opinion, that Judge Andrews had revoked Hubbard's bail

before he left the courtroom. We therefore assume that Hubbard did not fall within the "conditional bail release" exclusion of AS 11.81.-900(b)(34).

state must establish that the defendant was clearly under some form of official restraint. Normally, before a defendant could be convicted of escape, we have required the state to show that the defendant was under arrest. In *Maynard v. State*, 652 P.2d 489, 492 n. 6 (Alaska App.1982), we quoted with approval what appears to be the majority rule from R. Perkins, *Criminal Law:*

> Escape and the kindred offenses are clearly in the nature of obstructions of justice but they have been dealt with so commonly as distinct crimes that it seems wise to treat them as such. And before any effort to explore this field is attempted a clarification of terms is needed. The word 'escape' is used in two different senses in regard to the factual occurrence indicated, and in two (or more) different senses in its use as the name of a crime. In the technical sense an 'escape' is an unauthorized departure from legal custody; in a loose sense the word is used to indicate either such an unlawful departure or an avoidance of capture. And while the word is regularly used by the layman in the broader sense it usually is limited to the narrower meaning when used in the law,—although this is not always so. It is employed in this subsection exclusively in the technical sense. Thus if an officer approaches an offender for the purpose of making an arrest, which he is unable to do because the other eludes him by running away, there has been no 'escape' as the term is used here. It is necessary, however, to bear in mind that 'arrest' is also a technical term. If an officer having authority to make an arrest actually touches his arrestee, for the manifested purpose of apprehending him, the arrest is complete 'although he does not succeed in stopping or holding him even for an instant.' In such a case there is legal custody of the arrestee for an instant although the imprisonment is constructive rather than effective. Hence there would be an escape, if such an arrestee ran away after being touched by the officer with appropriate words of arrest and lawful authority for this purpose.

R. Perkins, *Criminal Law* at 500 (2d ed. 969) (citations omitted). In *Maynard,* we concluded that "[t]he offense of escape is complete when a person once in lawful custody, voluntarily removes himself from that custody without lawful authority." *Maynard,* 652 P.2d at 492.

In *Beckman v. State,* 689 P.2d 500, 502 n. 3 (Alaska App.1984), this court focused on the meaning of "custody" as it is used in the definition of "official detention" in the escape statute:

> "Custody" is not expressly defined in the provision of Alaska law dealing with escape. However, definitions of "custody" contained in escape statutes from other jurisdictions suggest that, in context, the word is intended to have a narrow meaning, essentially synonymous to "arrest."

In *Jacobson v. State,* 786 P.2d 388, 390–94 (Alaska App.1990), we followed *Beckman* in interpreting the escape statute. In *Jacobson,* the defendant was stopped by the police and handcuffed at the scene of a possible burglary. The defendant managed to free himself from one of the handcuffs and fled from the scene. He was convicted of escape in the second degree. On appeal, we concluded that the court could find that the defendant was "under official detention for a felony" for purposes of the escape statute only if he was under arrest for a felony when he eluded the police. *Id.* at 393. We remanded to the trial court to determine whether the defendant was under arrest for a felony at the time that he fled.

The state asks us to conclude that Hubbard was in "confinement under an order of a court in a criminal ... [proceeding]." The state points out that some jurisdictions have held that a defendant may be in "constructive custody" by order of the court. The state cites *United States v. Peterson,* 592 F.2d 1035 (9th Cir.1979). *See also Harrell v. State,* 743 S.W.2d 229, 231 (Tex. Cr.App.1987). In *Peterson,* the defendant appeared with his counsel for sentencing. The court imposed sentence and ordered that sentence to begin immediately. The court ordered Peterson's counsel to take him to the marshal's office so that Peter-

son could begin his sentence. When Peterson's counsel stopped to talk to someone in the hall, Peterson slipped away. Peterson was convicted of escape under 18 U.S.C. § 751(a) which provides:

Whoever escapes or attempts to escape ... from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate ... shall ... be fined not more than $5,000 or imprisoned not more than five years or both.

On appeal, the Ninth Circuit held that Peterson's actions violated the escape statute when the government proved that he had willfully failed to comply with the court's order placing him in custody. Although the *Peterson* case provides authority in support of the state's proposition, it is distinguishable because the federal statute is different from the Alaska statute. The federal statute appears to be more broad than the Alaska statute.

We believe that Alaska cases such as *Jacobson* point in the direction of strictly defining the phrase "official detention for a felony." We have consistently followed the maxim of statutory interpretation that ambiguities in penal statutes must be narrowly read and strictly construed against the government. *Kinnish v. State*, 777 P.2d 1179, 1181 (Alaska App.1989); 3 C. Sands, *Sutherland Statutory Construction* § 59.04 at 13 (4th ed. 1974). We see no indication of any legislative intent to adopt a doctrine of "constructive restraint." *See State v. Sanchez*, 145 Ariz. 313, 701 P.2d 571 (1985). Furthermore, we believe that there are sound reasons for requiring the state to prove that a person has been physically placed under arrest before allowing that person to be convicted of a felony. If the state were allowed to prove that a defendant was in custody without establishing that an arrest had been made, ambiguous situations might occur in which reasonable people could differ concerning the defendant's status. Such ambiguities could well result in a lack of notice. Adopting a bright-line rule for determining when a person is in custody will ensure objective, clear, and unambiguous notice to all concerned. *See* Model Penal

Code and Commentaries, § 242.2 at 214 (1980) and *Sanchez*, 701 P.2d at 573.

We accordingly conclude that since Hubbard was never placed under arrest before he left the courtroom, he was never in custody or in confinement under an order of a court. Thus he was never under "official detention for a felony" as is required for violation of AS 11.56.310(a)(1)(B). We therefore conclude that the trial court erred in failing to dismiss the indictment against Hubbard. We accordingly reverse Hubbard's conviction and order the trial court to dismiss the indictment.

REVERSED.