**Matthew D. MacDONALD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8357.**

Court of Appeals of Alaska.

Jan. 16, 2004.

J. John Franich, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In the summer of 1997, Matthew D. MacDonald was serving a sentence for a felony. On July 7th, the Alaska Parole Board granted MacDonald a temporary release from custody; he was supposed to return two days later. When MacDonald failed to return, the Parole Board issued a warrant for his arrest. Two months later, on September 3rd, the Fairbanks police received a tip that MacDonald could be found at a local apartment, so two officers went to the apartment to arrest him. But when the officers laid hands on MacDonald, he slipped from their grasp and ran away. (MacDonald was apprehended the following day.)

Based on his conduct, MacDonald was ultimately convicted of second-degree escape.[1] We affirmed MacDonald's conviction in *MacDonald v. State*, Alaska App. Memorandum Opinion No. 4178, 2000 WL 124803 (February 2, 2000).

The following year, MacDonald filed a petition for post-conviction relief in which he asserted that his trial attorney had been ineffective. Specifically, MacDonald argued that his attorney was incompetent for failing to realize that, even when the facts of MacDonald's case were construed in the light most favorable to the State, MacDonald's conduct did not constitute the crime of second-degree escape.

The superior court granted summary judgement to the State, and MacDonald now appeals the dismissal of his petition for post-conviction relief. We agree with the superior court that MacDonald failed to show any

reason to believe that his trial attorney was incompetent.

MacDonald was convicted of violating paragraph (a)(1)(B) of the second-degree escape statute, AS 11.56.310. Under this part of the statute, the crime of second-degree escape consists of "remov[ing] oneself from official detention for a felony". "Official detention", in turn, is defined as "custody, arrest, surrender in lieu of arrest, or actual or constructive restraint under an order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release". AS 11.81.900(b)(39).

■ MacDonald argues that he was not in "official detention" when he ran from the police on September 3, 1997. He notes that, even though the police touched him, they failed to hold him. From this, MacDonald concludes that he was only "constructively" restrained. And, because this "constructive restraint" was pursuant to an order of the Parole Board rather than an order of a court, MacDonald argues that this restraint did not qualify as "official detention". MacDonald relies on the clause of AS 11.81.900(b)(39) which speaks of "constructive restraint under an order of a court in a criminal or juvenile proceeding".

But AS 11.81.900(b)(39) defines "official detention" in the disjunctive; that is, "official detention" is defined as "custody" *or* "arrest" *or* "surrender in lieu of arrest" *or* "actual or constructive restraint under an order of a court". Thus, if the State proved that MacDonald was "arrested" when the officers came to the apartment on September 3, 1997, the issue of "constructive restraint" would be moot. And, under the common-law definition of "arrest", MacDonald was indeed arrested by the officers on September 3, 1997, even though the officers did not succeed in apprehending him.

As this Court noted in *Maynard v. State*, 652 P.2d 489, 492 n. 6 (Alaska App.1982), the common law deemed a person to be arrested "[i]f an officer having authority to make an arrest actually touches [the] arrestee, for the manifested purpose of apprehending him".

---

1. AS 11.56.310(a).

If so, then "the arrest is complete although [the officer] does not succeed in stopping or holding [the arrestee] even for an instant." [2]

In *Maynard,* we approved this common-law definition of "arrest". The jury at Mac-Donald's trial was instructed in accordance with this definition, and the jurors (by finding MacDonald guilty of escape) necessarily found that MacDonald had been arrested— *i.e.,* the jurors found that the officers had touched MacDonald for the manifested purpose of taking him into custody.

MacDonald argues, however, that this Court repudiated the common-law definition of "arrest" in *Hubbard v. State,* 800 P.2d 952 (Alaska App.1990), and that it was therefore plain error for the trial judge to instruct the jury on the common-law definition of "arrest"—and incompetence for MacDonald's trial attorney to fail to object to that jury instruction.

*Hubbard* involved a defendant who appeared in court for a bail revocation hearing. At the close of the hearing, the court found that Hubbard had violated the conditions of his release, and the court therefore revoked Hubbard's release. The court directed Hubbard to take a seat in the jury box (so that the judicial services officers could take him to jail along with the other waiting prisoners), but Hubbard instead walked out of the courtroom and did not return. Hubbard was later convicted of escape for this conduct.

This Court reversed Hubbard's conviction because we held that, under the facts described in the preceding paragraph, Hubbard had not been in "official detention" when he left the courtroom. MacDonald asserts that our decision in *Hubbard* stands as a rejection of the common-law definition of "arrest" that we adopted in *Maynard.* But a careful reading of *Hubbard* shows that we did not reject the common-law definition of "arrest". Rather, we applied that common-law definition to the facts of Hubbard's case:

> Normally, before a defendant could be convicted of escape, we have required the state to show that the defendant was under arrest. In *Maynard v. State,* . . . we quot-

ed with approval what appears to be the majority rule[:] . . . [I]f an officer approaches an offender for the purpose of making an arrest, which he is unable to do because the [offender] eludes him by running away, there has been no 'escape' . . . . It is necessary, however, to bear in mind that [an] 'arrest' [is complete if] an officer having authority to make an arrest actually touches [the] arrestee, for the manifested purpose of apprehending him[.] ·

*Hubbard,* 800 P.2d at 954. We further concluded that, for purposes of construing Alaska's definition of "official detention" (and, thus, defining the crime of escape), the term "custody" should be interpreted as "essentially synonymous" with the term "arrest". *Id.* at 954.[3]

After reaffirming these definitions of "arrest" and "custody", we rejected the State's argument that Hubbard should be considered to have been in "constructive custody" or "constructive restraint" after the court revoked his bail and ordered him to·sit in the jury box. Even though the bail-revoking court had clearly manifested its intention to place Hubbard in custody, we concluded that this was not enough to make Hubbard's departure from the courtroom an "escape". Rather, we continued to apply the common-law definitions of arrest and custody—definitions that required an act of touching before a person could be deemed to have been "arrested" or to have been placed in "custody". *Hubbard,* 800 P.2d at 955. Applying these common-law definitions, we concluded "that since Hubbard was never placed under arrest before he left the courtroom, he was never in custody"—never in "official detention"—and thus he could not lawfully be convicted of escape for leaving the courtroom. *Id.*

In other words, MacDonald is wrong when he claims that *Hubbard* disavowed the common-law definition of "arrest". Rather, the result in *Hubbard* stemmed directly from an application of that common-law definition. The *Hubbard* court concluded that, because the defendant was never touched, the defendant was never in custody.

---

**2.** Quoting R. Perkins, *Criminal Law* (2nd ed.1969), p. 500 (internal citations omitted).

**3.** Citing *Beckman v. State,* 689 P.2d 500, 502 n. 3 (Alaska App.1984).

In response to our decision in *Hubbard*, the legislature amended the definition of "official detention" in 1991 by adding the clause that speaks of "actual or constructive restraint". *See* SLA 1991, ch. 91, § 3. The purpose of this amendment, the legislature declared, was "to reverse the effect of ... *Hubbard v. State*". *See* SLA 1991, ch. 91, § 1 (printed in 1991 "Temporary and Special Acts and Resolves").

■ By adding the language about "constructive restraint" to supplement the existing language about "arrest" and "custody", the legislature expanded the definition of escape so that, in the future, defendants who absconded from a courtroom could be prosecuted for escape even though no one ever touched the defendant for the manifested purpose of apprehending them or placing them in custody. In other words, the issue of "constructive restraint" arises only when the State can not prove that the defendant was "arrested" under the common-law definition of that term approved in *Maynard*, and reaffirmed and applied in *Hubbard*.

For these reasons, it was not error for MacDonald's trial judge to instruct the jury on the elements of "arrest" as that term was defined and applied in *Maynard* and *Hubbard*. And it was not a sign of incompetence for MacDonald's trial attorney to acquiesce in the giving of this instruction. Indeed, such an instruction was necessary, because the State's theory of the case was that MacDonald was arrested—*i.e.*, placed in "official detention"—when the officers touched him for the manifested purpose of apprehending him. The jurors needed to be instructed on this point of law.

(And, because the jury found that the officers had indeed touched MacDonald for the purpose of apprehending him, MacDonald's case does not raise an issue of "constructive restraint". Instead, MacDonald's escape conviction rests on a finding that he was arrested.)

The judgement of the superior court—*i.e.*, the superior court's decision to dismiss MacDonald's petition for post-conviction relief—is AFFIRMED.