## State of Vermont v. William L. Blaine

[341 A.2d 16]

Nos. 49-73, 160-73, 206-73, 29-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 3, 1975

*Michael J. Sheehan, Esq.,* Windsor County State's Attorney, White River Junction, for the State.

*Thomas F. Heilmann, Esq.,* of *Richard E. Davis Associates, Inc.,* Barre; *William L. Blaine,* Windsor, *pro se.*

**Larrow, J.** These four cases involve the same respondent, and were consolidated for argument. Three of them arose from

a series of incidents on the same day, and were separately tried by jury with resulting verdicts and judgments of guilty. The fourth is an unrelated charge of speeding in violation of local ordinance, tried by court with a like result. Respondent was represented by counsel in the first three trials, and appeared pro se in the fourth.

Particular relevant facts will be separately considered in our discussion of each case, but the general sequence of events on April 18, 1972, from which the first three charges arose, is fairly simple. Respondent injured his neighbor, one LaFlam, during an altercation near their common boundary fence, with a dog chain-leash. He went voluntarily to the Windsor police station to give his version of the incident. While conversing with one officer, another came into the room, told him he had a warrant for his arrest, and started to read it. Respondent then drew a gun, in one case claimed by him to be a toy, and pointed it at the arresting officer. This officer retreated promptly, locking himself out of the room; the other officer stayed in his chair, allegedly because he was hampered by his equipment. The respondent hurriedly left the station, and was arrested about a week later, in Addison County by a deputy sheriff, when he voluntarily returned from New York State.

From this series of events arose three major prosecutions and trials. No. 49-73 is a charge of recklessly engaging in conduct which placed another person in danger of death or serious bodily injury, in violation of 13 V.S.A. § 1025. *See State* v. *Cushman,* 133 Vt. 121, 329 A.2d 648 (1974). It is based on respondent's pointing the gun at the police officer. No. 160-73 is a charge of aggravated assault, purposely or knowingly causing bodily injury to another with a deadly weapon, in violation of 13 V.S.A. § 1024(a)(2). It arises from the altercation with LaFlam. No. 206-73 is a charge of escape from lawful custody of a police officer, contrary to the then provisions of 13 V.S.A. § 1501. It arises from respondent's departure from the police station.

No. 29-74 is an unrelated charge of exceeding a posted 25 m.p.h. automobile speed limit in the Town of Windsor on October 21, 1973. A uniform traffic ticket was issued; trial was by court, with respondent appearing pro se.

## No. 49-73

The information in this case charged the respondent with a violation of 13 V.S.A. § 1025, by recklessly engaging in conduct placing another person in danger of death or serious bodily injury. It arises from the incident at the Windsor police station, when respondent, advised he was being arrested on a complaint based on his altercation with his neighbor, drew a gun on a police officer and left the station. Despite respondent's testimony, in this case, that the gun was a toy, the evidence was overwhelming that the gun was both real and loaded, and no serious argument is here made to the contrary.

Respondent argues, however, that his actions were justified because the warrant upon which he was about to be arrested had issued without probable cause. The warrant in question was the one based upon the prosecutor's information involved in No. 160-73.

Beyond a tenuous argument to the effect that it must have issued without probable cause, because it issued after the prosecutor knew only one side of the story and was obtained in a matter of minutes, we are pointed to no authorities that the claimed illegality, even if it existed, would justify the actions of the respondent. The issue was not raised on the trial below.

Moreover, as we have previously held, in cases like this one arising before the effective date of our present Rules of Criminal Procedure, the issue of probable cause is one which was properly raised by pre-trial motion, and which was waived if not so raised. *State* v. *Perry*, 131 Vt. 75, 300 A.2d 615 (1973); *In re Morris*, 126 Vt. 297, 229 A.2d 244 (1967). We note that it was not so raised either in this case, or in No. 160-73, the case in which the information issued. The argument has some ingenuity, but we are not persuaded that a claimed procedural defect, waived if not raised by motion, can be used as justification for armed assault.

The verdict and judgment in No. 49-73 must be affirmed.

## No. 160-73

This was the second case tried by jury below, even though in point of time it was based upon the first occurrence. In substance the charge is aggravated assault, by purposely or know-

ingly causing harm to one LaFlam with a deadly weapon, a chain, contrary to 13 V.S.A. § 1024(a)(2). The chain in question was in fact a chain dog leash, testified to as used by the respondent doubling it up and swinging it. The incident arose from an argument between respondent and LaFlam, on or near a common boundary fence, and trial emphasis was on who struck the first blow, and with what.

Respondent claims two trial errors. The first is admission of the events related under No. 49-73, on the theory that respondent's flight to avoid arrest was evidence of guilt, to a degree making that a principal rather than a subsidiary issue, argument to the jury emphasizing this point, and failure of the trial court to instruct the jury that the probative value of flight was at best slight. The second is a claimed defect in the charge with respect to the lesser included offense of simple assault.

Respondent's first claim of error cannot be sustained. Examination of the record reveals that all of the evidence relating to the flight from the police station came in without objection. The argument to the jury was unobjected to. No request for instruction on the matter was made to the trial court. And the failure to charge on this particular was not excepted to. In this posture of the record, a claim of error cannot be supported. *State* v. *Cabrera,* 127 Vt. 193, 243 A.2d 784 (1968); *State* v. *Hood,* 123 Vt. 273, 277, 187 A.2d 499 (1962). Only in the context of "glaring error" so grave and serious that it strikes at the very heart of respondent's constitutional rights will we examine a claim of error not made below. This is not such a case. *State* v. *McGrath,* 130 Vt. 400, 296 A.2d 636 (1972).

Respondent's other claim of error is to the effect that the court, in its charge, told the jury that they could consider convicting respondent for the lesser included charge of simple assault only if they concluded that the chain in question was not a deadly weapon. We are not pointed to any request to charge on this matter, or to any exception on this point to the charge as taken. The considerations above set forth with respect to the first claim of error also govern this claim. But we have, without such guidance, examined the charge as given. In one place, it does in effect read as the respondent has stated.

But in at least two other places, the last in summation, the charge is clear and explicit that if the jury could not find the elements of aggravated assault, as correctly defined in the instructions, but did find that the respondent purposely and knowingly caused bodily injury, they could find him guilty of simple, rather than aggravated, assault. Absent any request, or any exception, we must conclude that, in this respect at least, competent trial counsel entertained the belief that the charge as a whole "breathed the true spirit and doctrine of the law." Examining the charge as a whole, as we must, we agree. *State* v. *Adams*, 131 Vt. 413, 306 A.2d 92 (1973) ; *State* v. *Rebideau*, 132 Vt. 445, 454, 321 A.2d 58 (1974).

In No. 160-73, the judgment below must be affirmed.

### No. 206-73

This case is the charge of escape from lawful custody of a police officer. The critical issue is whether such lawful custody existed at the time respondent took his departure from the police station, after drawing his gun on the officer attempting arrest. It was raised by motion for directed verdict, and by exception to the court's instruction, contrary to respondent's request. The instruction told the jury that an arrest was made if the intention to make an arrest and the power of doing so in form co-exist and are made known to the person concerned, with no more being required, and that escape meant not only departing from custody, but fleeing to avoid, to get out of the way, as to flee to avoid arrest. We hold this instruction, and the failure to direct a verdict of acquittal, to be error.

The strongest set of facts the jury could find on the evidence as supporting arrest and custody is short of the mark. While not necessarily decisive, the return on the warrant which the police officer testified he had in hand shows an arrest about a week later, by another officer in another county, and not at the time and place custody is alleged to have existed. Beyond this, however, it is undisputed that the respondent came to the police station voluntarily; that the warrant was not fully read to him; that the officer with the warrant (or any other) never laid hands on him; that when the officer with the warrant saw

the gun he bolted and locked himself out of the room, while the other officer never even attempted to leave his chair. Despite respondent's denial (in this case) there was ample evidence that the gun was real and loaded, and that he indeed fled the station. But we are of the view that lawful custody of his person had not yet been effected. At the police station, the time never arrived when he had been taken into custody or deprived of his freedom in any significant way. *See State* v. *LaFleche,* 127 Vt. 482, 253 A.2d 124 (1969).

Citing no cases, the State would have us rely on a partial quotation from 25 C.J.S. *Custody,* at 88, to the effect that custody means "the detainer of a person by virtue of a lawful authority; the detention or restraint of a person contrary to or against his will." Like many partial quotations, it suffers out of context; the preceding words are: "It means an actual confinement or present means of enforcing it . . . ." These are precisely the elements here lacking. Lawful custody does not exist until the arrest is made. Here, it was not made.

> In general to effect an arrest, the officer must, in some unequivocal manner, acquire and exercise control of the person whom it is sought to arrest. 6 C.J.S. *Arrest* § 61, at 678.

*See also* 5 Am.Jur.2d *Arrest* § 1, at 696, to the effect that, absent a touching or other restraint, submission is required to perfect an arrest.

> [t]o constitute an arrest there must be some real or pretended legal authority for taking the party into custody; that he must be restrained of his liberty; that if he submits and is within the power of the officer it is sufficient without an actual touching of his person. *Goodell* v. *Tower,* 77 Vt. 61, 65, 58 A. 790 (1904).

At best, the process of arrest was started, but resisted and never completed. There was no touching or restraint; there was no submission. Control was not exercised, either by the officer who locked himself out or the officer who deemed it imprudent to rise from his chair. As we have outlined, the acts of the respondent amounted to reckless conduct placing another

person in danger, but they did not amount to escape from lawful custody. In this case, the judgment must be reversed, the sentence vacated, and a judgment of acquittal entered.

## No. 29-74

In this case, respondent, issued a Uniform Traffic Ticket, was convicted after trial by court of exceeding a posted speed limit of 25 m.p.h., by driving at 44 m.p.h. on Route 5, North Main Street, in the Village of Windsor, on October 21, 1973. He complains of his conviction upon two grounds. The first is that he did not effectively waive his right to trial by jury, as mandated by *State* v. *Santi*, 132 Vt. 615, 326 A.2d 149 (1974). The second is that the applicable speed limit, if there was such, was not indicated by appropriate signs.

The record belies his first contention. According to the transcript of his arraignment, he signed the waiver of jury trial which appears on the back of the Uniform Traffic Ticket, he did so in open court, and the waiver was filed with the court. As respects any action by him, this is compliance with the provisions of 13 V.S.A. § 7002 and of ch. I, article 10, of the Vermont Constitution. The requirement that the consent of the prosecuting officer be entered of record we deem to be complied with, when that officer proceeded to trial without questioning the waiver. Even without such formal compliance, no prejudice could result to the respondent. His first ground of appeal is without merit.

His second ground presents much more substance, particularly in view of the imprecise state of the record. The trial court made findings of fact, as requested, but did not find what the regulation, or ordinance, was that was violated, or any specifics with respect to posted regulatory signs. We have examined the transcript to determine, if possible, the theory upon which the prosecution was conducted.

The prosecutor's line of questioning seems to have been directed toward the purported existence of a local ordinance, although none was proved or specifically referred to. Absent such specific showing, the State now relies upon 23 V.S.A. § 2206 (b) to bridge the hiatus. That section reads:

§ 2206. Evidence

. . . .

> (b) Testimony of a witness as to the existence of a traffic control sign, signal, or marking, or sign establishing a speed zone, shall be prima facie evidence that any such traffic control device existed pursuant to a lawful statute, regulation or ordinance and that a defendant was lawfully required to obey the directions of such device.

There are two flaws in this line of reasoning. The first is that no valid ordinance could have existed with respect to the area in question, since 23 V.S.A. § 1007 and § 1008, even before current amendments, precluded the setting of local speed limits on state highways, as Route 5 is, and gave that authority to the state traffic committee under 23 V.S.A. § 1003. As expressly stated in § 1008, regulations on all state highways may be made only by that traffic committee. And, under § 1007 as it read at the time of the alleged offense (later made even more specific by 1973, No. 239, Adj. Sess. § 2), local legislative bodies were empowered to set specified speed limits only on state aid highways and local streets and highways, not on state highways. Whatever the signs, there could have been no valid ordinance under which the respondent could be convicted.

Although the State has not so argued, there remains the possibility that there was in existence a duly enacted regulation of the state traffic committee. The trial court did not so find; it only found generally the existence of a 25 m.p.h. speed zone. It made no finding at all with respect to signs. 23 V.S.A. § 1003 makes speed limits on state highways established by the traffic committee "effective when appropriate signs stating the limit are erected." 23 V.S.A. § 1021(b) provides:

§ 1021. Obedience to traffic-control devices

. . . .

> (b) No provision of this chapter for which signs are required may be enforced if at the time and place of the alleged violation an official sign is not in approximately proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section does not state that signs are required, the section is effective even though no signs are erected or in place.

Compliance with the statutory provision for posted signs is

354

mandatory. *State* v. *Noyes,* 107 Vt. 441, 180 A. 893 (1935). No
such compliance was found; on the evidence presented it could
not have been found, since the only testimony was that there
was no posted sign in the area facing the direction in which
respondent was travelling, the only one testified to being on
the southern boundary of the town, some miles away. The
prima facie case provided by 23 V.S.A. § 2206(b), and relied
upon by the State, did not come into existence, because there
was no testimony as to the existence of the appropriate signs,
in the required position and of the required legibility. The
judgment of guilty in No. 29-74 must be set aside, and a
judgment of acquittal entered.

*In Nos. 49-73 and 160-73 the respective entries are: Judgment affirmed; let execution be done.*

*In Nos. 206-73 and 29-74, the respective entries are: Judgment reversed. Judgment that the respondent is not guilty.*