### State of Vermont v. John P. Turgeon

[676 A.2d 339]

No. 94-683

Present: **Allen, C.J., Gibson, Dooley, Morse** and **Johnson, JJ.**

Opinion Filed March 8, 1996

*M. Patricia Zimmerman*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*William J. Donahue*, White River Junction, for Defendant-Appellant.

**Morse, J.** Defendant John Turgeon appeals his conviction on nine criminal charges, including attempted aggravated murder, contending that the trial court erred in: (1) failing to instruct the jury on attempted voluntary manslaughter; (2) failing to enter judgment of acquittal on the charge of escape; (3) instructing the jury on the use of reasonable force in arrest; and (4) failing to grant a mistrial after a juror collapsed. Defendant also contends that his right to a speedy trial was violated, and that his sentence was wrongfully increased. We reverse the conviction for escape, but otherwise affirm.

On October 6, 1990, defendant had an altercation with his estranged wife, Tammy Turgeon, outside Bucky's Foodstop in Windsor, Vermont. When defendant attempted to leave, his wife held onto the door of his truck and was injured as he drove away.

After defendant left Bucky's, he went to his rooming house and returned armed with a handgun in a shoulder holster and a shotgun. He drove past Bucky's, honking the horn and waving at police and rescue personnel who had responded to the scene of his wife's accident.

Officer Morse of the Windsor Police pursued defendant, who drove erratically, slamming on the brakes, weaving, and hitting parked cars. Defendant fired his shotgun at Officer Morse's cruiser twice, shattering the windshield. Two more cruisers joined the chase. They followed

defendant onto Main Street in Windsor, where he got out of his truck and again fired the shotgun at Officer Morse. The shots missed him, but a pellet struck Marilyn Morse-Jette, a pedestrian, in the head.

Defendant then fled on foot through a residential area. He was apprehended at the Union Street Market by Officer Cloud and Trooper Leahy who told him that he was under arrest, and to "freeze." When defendant tried to run away, a bystander tripped him. Defendant got up, and, ignoring the officers' demands that he surrender, shot Trooper Leahy in the abdomen. He left the scene and spent the night in the woods before being apprehended by the Vermont State Police the following morning.

In addition to nine state offenses, defendant was charged with two federal firearms violations. In June 1991, defendant and the State entered a plea bargain whereby the State agreed to dismiss three charges and defendant agreed to plead guilty to the remaining six. The State further agreed to recommend a maximum sentence of twenty-five years. Judge Hudson sentenced defendant to fifteen to twenty-five years for attempted aggravated murder, with sentences for the other state offenses to run concurrently. It was the intent of the parties that the state sentence would run concurrently with any federal sentence imposed for the firearms violations.

In March 1992, defendant was sentenced to two consecutive 120-month terms on the federal firearms charges, the first of which was not to begin until defendant had served ten years of his state sentence, or had been released from state custody, whichever came first. Defendant subsequently filed a motion to correct his state sentence, contending that because the maximum allowable term for aggravated attempted murder was twenty years, he could not be sentenced to fifteen to twenty-five. Defendant also noted that though the maximum allowable term for aggravated assault was five years, he had been sentenced to six years on that charge. Judge Hudson corrected the sentences, but ordered that they run consecutively so that they totalled eighteen to twenty-five. Thus the court effectively increased defendant's sentence.

In August 1992, defendant appealed to this Court, arguing that in accepting the plea bargain, he had relied on the condition that his state and federal sentences would run concurrently. We vacated the state sentences, holding that where a trial court cannot impose the sentence recommended by a plea agreement, the proper remedy is to allow the defendant to withdraw his plea and proceed to trial. *State v. Turgeon*, 161 Vt. 561, 561, 641 A.2d 88, 89 (1993) (mem.). If defendant

chose not to withdraw his plea, his sentence was to be redetermined on remand.

Defendant elected to withdraw his plea in September 1993. In June 1994, defendant filed a motion to dismiss for lack of a speedy trial, which was denied. Two weeks later, a four-day trial produced a jury verdict of guilty on all counts. Judge Hudson imposed a sentence of 24.5 to 43 years.

## I.

Defendant first argues that the court committed reversible error in failing to instruct the jury on the lesser-included offense of attempted voluntary manslaughter. He contends that the jury could have found that his rampage was caused by the fight with his wife, and that his state of mind mitigated the offense.

Voluntary manslaughter has been defined as

> "the unlawful killing of another, without malice . . . as when the act is committed *with a real design and purpose to kill, but through the violence of sudden passion occasioned by some great provocation* . . . Every man, when assaulted with violence or great rudeness is inspired with a sudden impulse of anger which puts him upon resistance before time for cool reflection, and if during that period he attacks his assailant with a weapon likely to endanger life, and death ensues, it is regarded as done through heat of blood, or violence of anger, and not through malice . . . ."

*State v. Trombly*, 148 Vt. 293, 302, 532 A.2d 963, 969 (1987) (first alteration in original) (quoting *State v. McDonnell*, 32 Vt. 491, 545 (1860) (*overruled on other grounds, State v. Burpee*, 65 Vt. 1, 36, 25 A. 964, 974 (1892)); see also *State v. Duff*, 150 Vt. 329, 331, 554 A.2d 214, 215 (1988) (in homicide prosecution, malice may be negated by finding of "sudden passion or great provocation") (*overruled on other grounds, State v. Powell*, 158 Vt. 280, 286, 608 A.2d 45, 48 (1992)).

In more modern terms, voluntary manslaughter has four elements: (1) adequate provocation; (2) inadequate time to regain self-control or "cool off"; (3) actual provocation; and (4) actual failure to "cool off." 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.10, at 255 (1986). The first and second of these elements were conspicuously absent in this case.

Whether provocation is legally adequate to reduce murder to manslaughter is determined by an objective test; the loss of self-

control must be reasonable under the circumstances. See *State v. Arteaga*, 896 P.2d 1035, 1046 (Kan. 1995) (whether provocation is legally sufficient is determined by objective test); *State v. Mauricio*, 568 A.2d 879, 884 (N.J. 1990) (question of whether provocation is adequate amounts to whether loss of self-control is reasonable).

The alleged provocation here was a heated verbal exchange between defendant and his wife. She had obtained a relief-from-abuse order, and tormented him about the fact that he was legally barred from visiting his son. She also tried to detain him by holding on to his truck door. His response was a fit of anger, but it was not directed at his wife. Instead, after leading police on a chase through Windsor, he shot Trooper Leahy, a third party who was not involved in the initial altercation. This response cannot, under any view of the facts, be deemed a reasonable reaction to a domestic confrontation.

█ Furthermore, as the elements make plain, voluntary manslaughter is a time-sensitive doctrine; it applies only where an adequately provoked individual strikes before he has an opportunity to cool off. See *Trombly*, 148 Vt. at 302-03, 532 A.2d at 969; *State v. McDonnell*, 32 Vt. at 545 (if man assaulted with violence or great rudeness acts before time for cool reflection, it is regarded as done through heat of blood, not malice). The cooling-off element is also evaluated under an objective standard. If a reasonable person would have regained self-control in the period between the provocative event and the violent response, the lesser-included offense is not available. See *Mauricio*, 568 A.2d at 884 (even where provocation is reasonable, manslaughter not available if one should have cooled off).

Again, under no reasonable view of the evidence, given the substantial amount of time that passed between defendant's encounter with his wife and the shooting of Trooper Leahy, can the "sudden response" aspect of the test be met. Defendant had time to cool off.

█ The trial court need only instruct the jury on the elements of lesser-included offenses that are fairly raised; it need not charge on a theory not supported by the evidence. *State v. Joy*, 149 Vt. 607, 610, 549 A.2d 1033, 1035 (1988). No reasonable jury could find that the factual scenario in this case fits the crime of voluntary manslaughter. The court did not err. See *State v. Bailey*, 889 P.2d 738, 748-49 (Kan. 1995) (failure to instruct on voluntary manslaughter not error absent substantial evidence that reasonably supports conviction on the charge); *People v. Pouncey*, 471 N.W.2d 346, 351 (Mich. 1991) (refusal to instruct on voluntary manslaughter correct where evidence did not support charge).

## II.

 Defendant also contends that the court should have entered judgment of acquittal on the escape charge, see V.R.Cr.P. 29, because he was never taken into custody. Defendant is correct that there is no escape absent lawful custody. 13 V.S.A. § 1501 ("person who, *while in lawful custody* . . . escapes or attempts to escape," commits crime of escape) (emphasis added). Lawful custody does not arise until defendant is brought under the officer's control through physical restraint, or submits to the officer's authority. A suspect who resists, as defendant did here, is not in custody until his liberty is restrained. *State v. Blaine*, 133 Vt. 345, 351, 341 A.2d 16, 20 (1975) ("process of arrest was started, but resisted and never completed").

In *Blaine*, the defendant, who had injured his neighbor during a dispute, went to the Windsor police station to describe his version of the incident. While he was speaking to one officer, another entered the room and told him he had a warrant for his arrest. The defendant drew a gun and pointed it at the arresting officer. The defendant then fled the station. The Court held that, because the defendant did not submit to arrest, and was never restrained or in the control of the officers, there was no escape. *Id.*

 Here as well, defendant was never in the control of the officers; when Trooper Leahy told him to freeze and attempted to arrest him, defendant fled. The crime of escape does not fit the facts, and we must reverse the escape conviction. Because the one-to-three-year sentence for escape is concurrent with the fifteen-to-twenty-year sentence for attempted murder, the total length of defendant's sentence is unchanged by this ruling, and it is unnecessary to remand for resentencing. See *State v. Simpson*, 160 Vt. 220, 225, 627 A.2d 346, 350 (1993) (when fewer than all convictions are reversed on appeal, remand for resentencing not required if separate sentences were imposed for each offense).

## III.

 Under 13 V.S.A. § 1024(a)(4), a person is guilty of aggravated assault if he causes physical injury to any person with intent to prevent a law enforcement officer from performing a lawful duty. Defendant's conduct falls squarely within this language; he injured Marilyn Morse-Jette when he shot at Officer Morse in an attempt to evade arrest. The court instructed the jury that an officer is entitled to use reasonable force when making an arrest. Defendant argues

that the court erred in its instruction on reasonable force, because the officer never effected an arrest. Arrest, however, is not an element of the crime charged; defendant can be found guilty of aggravated assault regardless of whether arrest was accomplished. We fail to see how the instruction harmed defendant. There was no error.

## IV.

Next defendant claims that he was deprived of his right to a speedy trial because he was not tried within the time limits established by this Court's Administrative Order No. 5, § 2. The standard we apply to such a claim is as follows:

> The failure to bring a defendant to trial within the time limits set by our administrative order does not necessarily mean that the defendant was denied a speedy trial or that the case against him must be dismissed. Thus, rather than quibble over calculations of time . . . we examine the circumstances . . . according to the standards set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) . . . . Those four factors are the length of the delay, the reason for the delay, defendant's efforts at obtaining a speedy trial, and the prejudice to the defendant.

*State v. Keith*, 160 Vt. 257, 266-67, 628 A.2d 1247, 1253 (1993) (citations omitted). Of these factors, prejudice is the most important. Where there is no prejudice to the defense at trial, a speedy-trial claim cannot prevail. *Id.* at 268-69, 628 A.2d at 1254.

Defendant elected to withdraw his plea in September 1993. In November, he indicated that he was ready to go to trial, and requested that he be transferred from the federal penitentiary at Leavenworth, Kansas, to Vermont. In December defendant filed a demand for a speedy trial. The Department of Corrections had requested that defendant be returned by the United States Marshals Service rather than through more costly commercial travel, and the State was granted a continuance because of delays that occurred in arranging defendant's return to Vermont. Trial commenced in June 1994. Thus approximately seven months passed between the date defendant said he was ready to go forward and the date the trial began.

Defendant asserts that he was prejudiced because two witnesses he wished to call were no longer available by the time his trial went forward. One, Vivian Young, had died and the second, Tammy

Turgeon, had moved to another jurisdiction. The testimony of these witnesses was relevant to the issue of provocation. Tammy Turgeon, defendant's estranged wife, would have testified that she did things "that just drove [her husband] to where he just couldn't handle it anymore," and that on the night in question she started a fight with him. Vivian Young, a witness to the altercation, would have testified that "when John would try to avoid Tammy, Tammy would go out of her way to create . . . problems."

As we noted above, however, even had these witnesses testified, defendant would not have been entitled to an instruction on attempted voluntary manslaughter. Moreover, their sworn statements taken at the first sentencing hearing were read to the jury. No other claim of prejudice has been made. The court did not err in denying defendant's motion to dismiss for lack of a speedy trial.

## V.

■ Defendant further claims that his final sentence (24.5 to 43 years), which is longer than his plea bargained sentence (fifteen to twenty-five years), is presumptively vindictive, and must be overturned. A presumption of vindictiveness arises only where "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Alabama v. Smith*, 490 U.S. 794, 799-800 (1989) (citation omitted) (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)).

The circumstances of this case do not create a reasonable likelihood of vindictiveness. Though the same judge imposed both sentences, the first sentence was imposed in the context of a plea bargain. Theoretically, absent a plea agreement, the judge could have imposed a sentence harsher than the State recommended. In this case, however, the court's discretion was tempered by the State's agreement to dismiss three counts and not recommend a sentence in excess of twenty-five years. The difference between the two sentences may be explained by the fact that Judge Hudson's discretion was not so limited when he imposed the final sentence following trial. No presumption of vindictiveness arises here, and defendant has shown no evidence of actual vindictiveness. See *McKenzie v. Risley*, 842 F.2d 1525, 1537 (9th Cir. 1988) (that sentence imposed after trial is more severe than one judge would have imposed as part of plea bargain does not impeach legitimacy of sentence; judge could have approved

settlement calling for sentence lighter than he would have chosen to impose); *United States v. Townsend*, 796 F.2d 158, 164 (6th Cir. 1986) (fact that defendant received more severe sentence upon conviction than he would have under plea agreement does not establish judicial vindictiveness); *United States v. Lippert*, 740 F.2d 457, 460 (6th Cir. 1984) (having withdrawn plea bargain, defendant cannot expect to receive benefits of bargain after conviction).

## VI.

Finally, defendant claims that the court erred by not declaring a mistrial when one of the jurors suffered a seizure during trial. This claim is without merit. When questioned, the jurors gave no indication that the panel had been compromised by the incident in any way. Moreover, the juror who collapsed was excused. There was no justification for a mistrial. See *State v. Jones*, 160 Vt. 440, 449, 631 A.2d 840, 847 (1993) (court should not grant mistrial unless moving party establishes prejudice).

*Conviction for escape reversed; otherwise affirmed.*