# State of Vermont v. Patrick Thomas Shaw

[721 A.2d 486]

No. 96-546

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 25, 1998

Motion for Reargument Denied October 15, 1998

*William H. Sorrell*, Attorney General, *David Tartter*, Assistant Attorney General, Montpelier, and *John Quinn*, Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *William A. Nelson* and *Anna Saxman*, Appellate Attorneys, and *Karen Misbach* and *Robert Hubbard*, Law Clerks (On the Brief), Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** Defendant appeals his conviction for second-degree murder, claiming error in the district court's failure to instruct the jury on the doctrine of imperfect self-defense. Defendant contends that the court's jury instruction on complete self-defense and "heat of passion" manslaughter did not place his defense theory squarely before the jury. We hold that the doctrine of imperfect self-defense is not recognized in Vermont and thus affirm.

Defendant Patrick Shaw and the victim, John Hallock, both residents of the Town of Orwell, were neighbors who had developed an antagonistic relationship. Defendant testified that on several occasions before the shooting, he and Hallock had hostile confrontations. Defendant also understood the victim to have threatened to shoot a number of people in town.

On a September morning in 1995, defendant left his auto body shop, drove to the woods near Hallock's house, and parked his truck

about 500 yards away from the house. Defendant walked through the woods with a loaded .22 gauge rifle, allegedly to hunt squirrel and scout for deer. At the base of a hill located approximately 300 yards from Hallock's home, defendant claims to have fired his rifle twice at a squirrel. Defendant then heard Hallock yelling, "Get the f_____ out of here or I will put a bullet in you." Defendant was perched on a rock ledge some twenty to thirty feet above Hallock and could see that Hallock was approximately forty to sixty yards away. He testified that he felt exposed and vulnerable on the rock shelf, and believed that Hallock would shoot him. According to defendant's testimony, in an effort to scare Hallock, defendant turned and fired a shot at Hallock before running to his truck. Defendant testified that he returned to the auto body shop unaware that the shot he fired had hit Hallock, and told no one of the incident. Hallock's body was found approximately one hundred yards from his home the day after the shooting. Hallock had died from a single gunshot wound to his head. The State charged defendant with second-degree murder.

At trial, defendant argued that he fired at Hallock in self-defense. The court instructed the jury on complete and lawful self-defense, see 13 V.S.A. § 2305 (justifiable homicide), but denied defendant's request for an instruction on imperfect self-defense. The court also instructed the jury that it could convict defendant of the lesser-included offense of voluntary manslaughter if it found that (1) defendant shot Hallock "out of passion or provocation brought about by adequate cause and before defendant had reasonable time to calm down," or (2) defendant did not intend to kill Hallock but nonetheless "acted with unreasonable disregard for life." It charged the jury that a conviction of second-degree murder could be based on defendant's "wanton disregard of the likelihood that his conduct would naturally cause death or great bodily harm." The jury found defendant guilty of murder in the second degree.

Defendant urges us to recognize the doctrine of imperfect self-defense under which a charge of murder will be reduced to manslaughter where a defendant had an honest but unreasonable belief that he faced immediate and grave physical danger and that he had to use deadly force upon the adversary to prevent the danger. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.11(a) (1986).

We first examine the law of complete or legal self-defense in Vermont. Vermont law provides that a person who kills or wounds another "[i]n the just and necessary defense of his own life . . . shall be guiltless." 13 V.S.A. § 2305(1). In *State v. Wheelock*, 158 Vt. 302,

307, 609 A.2d 972, 975 (1992), we reiterated the longstanding require-
ment that, for self-defense to be "just and necessary," a defendant's
belief that he faces imminent peril, and his belief in the need to
employ deadly force to repel that peril, must be reasonable. "A
defendant must have an honest belief of imminent peril, but that
honest belief by itself is insufficient to invoke the defense. The belief
must be grounded in reason." *Id.* at 308, 609 A.2d at 976; see also
*State v. Darling*, 141 Vt. 358, 361-62, 449 A.2d 928, 929 (1982); *State
v. Doherty*, 72 Vt. 381, 399, 48 A. 658, 664 (1900) (defendant entitled
to justification of self-defense where circumstances are such as to
reasonably lead him to believe he is in danger of being killed or
inflicted with great bodily harm).

In jurisdictions where it is recognized, imperfect self-defense
applies where the defendant's belief in the need to use force is
unreasonable. See, e.g., *State v. Faulkner*, 483 A.2d 759, 763 (Md.
1984) (imperfect self-defense requires no more than defendant's
subjective belief that his actions were necessary for his safety, even
though the belief was objectively unreasonable). Courts that recog-
nize imperfect self-defense reason that a defendant who commits a
homicide while honestly believing he is threatened with death or
serious bodily harm does not act with malice and that, absent malice,
he cannot be convicted of murder. See *id.* at 769; *People v. Flannel*,
603 P.2d 1, 7 (Cal. 1980) ("It is the honest belief of imminent peril that
negates malice in a case of complete self-defense; the reasonableness
of the belief simply goes to the justification for the killing."). Because
the defendant's belief in an imperfect self-defense is unreasonable, he
is nevertheless to blame for the homicide and is not entitled to full
exoneration. See *Faulkner*, 483 A.2d at 769.

We have not yet addressed whether to recognize imperfect self-
defense as articulated in *Faulkner*. In *State v. Wheelock, supra,* the
defendant requested a jury instruction on imperfect self-defense, but
the court declined to give a separate imperfect self-defense instruc-
tion, and the defendant was convicted of second-degree murder. He
appealed, claiming that the trial court erred by failing to charge the
jury on imperfect self-defense. We concluded that "[i]mperfect self-
defense . . . was put before the jury in the guise of a well-established
defense that mitigates murder to manslaughter, diminished capacity."
See 158 Vt. at 310, 609 A.2d at 977. Imperfect self-defense, however,
is different from the diminished capacity defense or any other
commonly recognized mitigation defense. See *Faulkner*, 483 A.2d at
762. To the extent *Wheelock* suggests that diminished capacity falls

under the umbrella of imperfect self-defense, we now clarify that it does not.

Defendant asserts three reasons why we should now adopt the doctrine of imperfect self-defense. First, defendant contends that the doctrine is not a novel defense, but rather comprises a part of the common law of homicide that has been recognized in decisions of this Court. Second, he argues that as a matter of basic justice and equity, a person who believes sincerely, though unreasonably, that he must use deadly force to save his life should not be convicted of murder. Third, defendant contends that, unlike the defendant in *Wheelock*, his theory of defense was never put squarely before the jury. We consider these arguments in turn.

## I. Common Law

Defendant argues that imperfect self-defense comprises a class of voluntary manslaughter that has been recognized at common law for centuries and in this Court's earlier cases. Manslaughter, according to defendant, is a catch-all concept that encompasses a variety of homicides that are between murder and innocence. The element that distinguishes murder from manslaughter is the presence or absence of malice. See *State v. Long*, 95 Vt. 485, 496, 115 A. 734, 739 (1922). In Vermont, there are at least two ways in which malice may be negated in the context of a homicide prosecution. The first is by reason of sudden passion or provocation; the second is by reason of a defendant's diminished capacity. See *State v. Duff*, 150 Vt. 329, 331, 554 A.2d 214, 215 (1988).

Heat-of-passion manslaughter is "'the unlawful killing of another, without malice . . . as when the act is committed with a real design and purpose to kill, but through the violence of sudden passion occasioned by some great provocation . . . .'" *State v. Turgeon*, 165 Vt. 28, 32, 676 A.2d 339, 341 (1996) (emphasis omitted) (quoting *State v. McDonnell*, 32 Vt. 491, 545 (1860), *overruled on other grounds by State v. Burpee*, 65 Vt. 1, 36, 25 A. 964, 974 (1892)). In more modern terms, heat-of-passion manslaughter has been found where there was "(1) adequate provocation; (2) inadequate time to regain self-control or 'cool off'; (3) actual provocation; and (4) actual failure to 'cool off.'" *Id.* at 32, 676 A.2d at 342. An objective test determines whether provocation is legally adequate to reduce murder to manslaughter: the loss of self-control must be reasonable under the circumstances. See *id.* at 32-33, 676 A.2d at 342. An objective test is also required for mitigation with respect to the timing of the killing. Mitigation from

murder to manslaughter will be considered only where the defendant strikes before he had an opportunity to cool off. See *id.* at 33, 676 A.2d at 342.

Voluntary manslaughter may also be based on a defendant's diminished capacity at the time of the killing. See *Duff*, 150 Vt. at 331, 554 A.2d at 215. Diminished capacity is predicated on finding that the defendant suffered from mental disabilities which prevented him from forming the state of mind — in this case, malice — which is an essential element of the greater offense charged. See *id.* Thus, sudden passion or great provocation is not an essential element of voluntary manslaughter. See *id.* at 333, 554 A.2d at 216.

We summarized the law of manslaughter in *Wheelock* by observing that "extenuating circumstances affecting a defendant's state of mind negate malice in voluntary manslaughter." 158 Vt. at 310, 609 A.2d at 977; see also *State v. Johnson*, 158 Vt. 508, 518-19 n.4, 615 A.2d 132, 138 n.4 (1992) ("In straightforward terminology, voluntary manslaughter is an intentional killing committed under extenuating circumstances that would mitigate, but not justify, the killing, such as provocation that would cause a reasonable person to lose self control."); see also 2 Wharton's Criminal Law § 157, at 350 (15th ed. 1994) (to reduce murder to manslaughter, provocation must be adequate in the sense that it would deprive a reasonable person of self-control and cause her to act out of passion rather than reason). Defendant contends that his actual and honest self-defense motive was an extenuating circumstance that should mitigate murder to voluntary manslaughter, just as heat of passion or diminished capacity are extenuating circumstances that mitigate murder to manslaughter.

Defendant asserts that prior Vermont cases, such as *State v. Doherty*, 72 Vt. 381, 48 A. 658 (1900), have implicitly recognized imperfect self-defense. In *State v. Doherty*, the defendant and the victim had agreed to settle their differences by mutual combat. According to the defendant, when the victim removed his overcoat in preparation for the fight, the defendant became frightened of the victim and shot him. The trial court instructed the jury that "if the shooting of Murphy was the result of the fear, fright, nervousness, or terror that seized the [defendant], after he went out of the barn, it was manslaughter and not murder." *Id.* at 393, 48 A. at 662. It also instructed the jury that if it reasonably seemed to the defendant that he was in danger of being killed or of great bodily harm, he had a right to defend himself. See *id.* at 397, 48 A. at 663. Nonetheless, the defendant was convicted of first-degree murder.

On appeal, the defendant claimed that the court erred by failing to instruct the jury that if he acted unreasonably in defending himself, he was guilty only of manslaughter. See *id.* The Court rejected this claim, ruling that the jury charge correctly stated the law on manslaughter and on self-defense. "That is, the charge placed the elements of fear, fright, nervousness and cowardice on the same plane with anger and heat of blood." *Id.* at 395, 48 A. at 663. Thus, the Court held that the instruction was correct in stating that heat-of-passion manslaughter could be shown by fear as well as anger. The Court also approved the trial court's self-defense instruction that an acquittal required a finding that the defendant reasonably have believed that he was in danger of being killed or of suffering great bodily harm from the victim. See *id.* at 397, 48 A. at 663.

Relying on a citation to *Doherty* in an early North Carolina case, *State v. Thomas*, 114 S.E. 834, 837 (N.C. 1922), defendant argues that *Doherty* recognizes an imperfect self-defense claim. We construe the decision in *Doherty*, however, as consistent with the majority of states that hold that only a reasonable mistake as to the need for deadly force would result in an acquittal on self-defense; the unreasonably mistaken actor would suffer as a murderer. See R. Singer, *The Resurgence of Mens Rea: II - Honest But Unreasonable Mistake of Fact in Self Defense*, 28 B.C. L. Rev. 459, 486-87 (1987) (analyzing *Doherty* as the case which placed Vermont in category of states that have adopted objective reasonableness test).

Defendant's characterization of other Vermont caselaw as part of a common-law recognition of imperfect self-defense is similarly flawed. For example, in *State v. McDonnell*, a mutual combat case, the Court set aside a murder verdict and granted a new trial to allow the jury to consider "the existence of any legal provocation, such as a blow or blows inflicted by the deceased, and the occurrence of hot blood in consequence." 32 Vt. at 545. Like *Doherty, McDonnell* recognizes that sudden emotion arising from adequate provocation may reduce a murder conviction to manslaughter. See *id.* Both *Doherty* and *McDonnell* recognize heat-of-passion manslaughter; neither case, however, allows mitigation of murder to manslaughter based on an unreasonable but honest belief that deadly force was necessary.

The doctrine of imperfect self-defense has not been generally recognized at common law. See, e.g., *State v. Bowens*, 532 A.2d 215 (N.J. 1987) (refusing to recognize doctrine of imperfect self-defense in part because of doctrine's incompatibility with common-law's require-ment that defendant's actions be reasonable or constitute reasonable

reaction to events); Singer, *supra*, at 486 n.151 ("In the early decades [of American common law], a defendant who lost the defense of self defense was treated as a murderer in most jurisdictions. Only later did the notion of 'imperfect self defense,' classifying the honest but unreasonable killer as a manslaughterer, occur . . . ."). Thus, the paucity of early cases from Vermont and other states supporting defendant's common-law claim of imperfect self-defense is not surprising, as the defense contravenes a fundamental principal found in both perfect self-defense and the doctrines which mitigate murder to manslaughter. See also Model Penal Code § 3.04 cmt. 2(a), at 35 (1985) (observing that, at time of code's drafting, prevailing self-defense rules, both common law and statutory, usually had requirement of reasonable ground for belief that deadly force was necessary).

We therefore disagree with defendant's contention that imperfect self-defense comprises part of Vermont's common law of homicide. Both lawful self-defense and manslaughter, as they have been recognized in Vermont, require that the defendant perceive a situation in a reasonable manner, as in the case of perfect self-defense, or have some objectively identifiable reason for departing from reasonable behavior, as in heat-of-passion and diminished-capacity manslaughter. We conclude that the doctrine of imperfect self-defense — which requires no test of reasonableness nor any objective inquiry — presents a marked departure from the established principles that underlie the rationale for permitting an acquittal due to self-defense, and the mitigation of murder to manslaughter.

## II. Justice and Equity

Defendant contends that basic justice and equity compel submission of an imperfect self-defense claim to the jury. He argues that a person who believes sincerely, though unreasonably, that he must use deadly force to save his life does not act with malice and should not be convicted of murder. He characterizes the mitigating defense as a middle ground between a murder conviction on the one hand, and the full justification and exoneration that comes with complete self-defense on the other. According to defendant, commentators generally support the doctrine, and courts in several jurisdictions have adopted imperfect self-defense.

We are not persuaded by defendant's justice-and-equity argument for three reasons. First, if the doctrine of imperfect self-defense is adopted in Vermont, it should be done by the Legislature as has been

done in some other states. See *Wheelock*, 158 Vt. at 312, 609 A.2d at 978 (Dooley, J., concurring); see also *State v. Thompson*, 544 N.W.2d 8, 12-13 (Minn. 1996) (declining to adopt imperfect self-defense where legislature has not mandated it). Statutes in other jurisdictions present a variety of legislative options on homicides that are neither murder nor totally justified. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.11(a) n.6 (1986) (describing differences between statutes in five states). And, the Model Penal Code treats imperfect self-defense as reckless or negligent homicide, an option that only two states have enacted. See *id.* Because the Legislature is in a better position to determine which, if any, of these options Vermont should recognize, we decline to adopt this new defense. See also Model Penal Code and Commentaries § 210.3 cmt. 3, at 50 (Model Penal Code treats issue as appropriate for legislation).

Second, contrary to defendant's assertion that courts and commentators generally advocate in favor of the doctrine, courts in other jurisdictions have been reluctant to recognize imperfect self-defense. See, e.g., *State v. Eagle Thunder*, 266 N.W.2d 755, 757 (Neb. 1978) (reading reasonableness requirement into statute that does not explicitly require reasonableness because nothing in statute shows intent to change common-law rule). "[T]here has been little more than a thin line of academic criticism" against the requirement of reasonable belief for justification defenses. Model Penal Code and Commentaries § 3.09 cmt. 2, at 151. Far from commanding universal support as a doctrine essential to basic justice and equity, the imperfect self-defense doctrine has been criticized for injecting "a subjective element into an otherwise objective part of the law." C. Hobson, *Reforming California's Homicide Law*, 23 Pepp. L. Rev. 495, 550 (1996). Moreover, the doctrine has been considered "problematic because it allows unscrupulous defendants to manipulate the assessment of their culpability by providing an after-the-fact justification for murder." C. Lee, *Race and Self-Defense: Toward a Normative Conception of Reasonableness*, 81 Minn. L. Rev. 367, 396 (1996). We reject the implication that defendant's justice-and-equity argument has been broadly accepted elsewhere.

Our third objection stems from operation of the doctrine. As defendant stresses, imperfect self-defense operates chiefly by negating malice. See *Faulkner*, 483 A.2d at 761; *Flannel*, 603 P.2d at 7. In Vermont, the requisite mental state of malice needed to support a murder conviction can be established by showing that a defendant's conduct demonstrates "wanton disregard of the likelihood that [his]

behavior may naturally cause death or great bodily harm." *State v. Doucette*, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983). As defendant himself contended in his proposed jury instructions, the "wanton disregard" may refer to "extremely negligent conduct." See also 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.4, at 199-200 (1986) ("Extremely negligent conduct . . . though unaccompanied by any intent to kill or do serious bodily injury . . . may constitute murder."). So framed, the line becomes blurred between the "unreasonable but honest" state of mind which will allow invocation of imperfect self-defense, and the "extremely negligent conduct," which would support murder. We are wary of the task of instructing juries to, on the one hand, find murder based on one type of negligent conduct, while instructing them to mitigate murder to manslaughter based on another type of negligent conduct.

### III. Defendant's Theory of Defense

Defendant claims the court's instructions prevented the jury from considering a manslaughter conviction because the court instructed it not to consider manslaughter if the State had proven the elements of murder and had proven also that defendant was not entitled to complete self-defense. This contention is without merit because the court's instructions on murder specifically stated: "In considering the mental element [to support murder] you should also consider the 'passion and provocation' instruction I will give you in a few minutes." Thus, the court made clear that, as part of its deliberation on murder, the jury should consider the possible mitigating effect of passion and provocation.

Finally, defendant claims that the court's jury instructions failed to place his theory of defense before the jury. Jury instructions should be "full, fair, and correct on all the issues, theories, and claims within the pleadings, so far as the evidence requires." *State v. Ciocca*, 125 Vt. 64, 74-75, 209 A.2d 507, 515 (1965). Here, the court instructed the jury on lawful self-defense as well as voluntary and involuntary manslaughter. Defendant's theory that he was not guilty by reason of self-defense, or guilty of a homicide no more serious than manslaughter, was adequately placed before the jury. Thus, to the extent that defendant's theory of the case presented justification for the homicide or mitigating circumstances, the jury had the opportunity to acquit defendant or convict him of manslaughter. Defendant's claim that the

court erred in refusing to instruct the jury to consider a defense that neither this Court nor the Legislature has recognized must fail.

*Affirmed.*