#25326-aff in pt & rev in pt-JKK

**2010 SD 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JOSEPH E. BRADLEY,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MERTON B. TICE, JR.
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
          and appellee.

BRADLEY T. BORGE
Dakota Plains Legal Services
Public Advocacy Project
Rapid City, South Dakota                    Attorneys for defendant
          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2010

OPINION FILED **05/12/10**

#25326

KONENKAMP, Justice

[¶1.]		Defendant was convicted of two counts of first degree escape and one count of simple assault on a public officer. He appeals on grounds that the court abused its discretion when it refused to sever the charges and erred when it failed to grant his motion for judgment of acquittal. Because defendant was not in the immediate custody of a law enforcement officer or a Department of Corrections employee on one of the two occasions when he departed against commands to submit or surrender, we reverse one of the two escape convictions. We affirm defendant's other first degree escape conviction and his conviction for simple assault.

## Background

[¶2.]		Joseph Bradley (defendant) was on parole with the Department of Corrections. He met with his parole officer, Jack Gray, at Gray's office, on September 26, 2008. Parole Officer Gray obtained a urine sample from defendant. In a field test, the sample tested positive for amphetamines. Defendant claimed that taking a certain prescription medication caused his positive result. Gray asked defendant to provide a copy of the prescription. Gray then sent the urine sample to the State Laboratory for further analysis. The lab later reported that defendant's sample tested positive for MDMA, otherwise known as ecstasy. According to the report, defendant's prescription medication would not have caused a positive MDMA result.

[¶3.]		Gray contacted defendant for another meeting. On October 22, 2008, defendant arrived at Gray's office. Gray confronted defendant about his urine

-1-

sample, but did not mention that the sample tested positive for ecstasy. At some point Gray decided he was going to arrest defendant. Gray asked him to stand up and put his hands behind his back. Defendant stood, turned, and placed his hands behind his back. As Gray approached him with handcuffs, defendant ran out of Gray's office. He fled from the building, while three parole officers gave chase. He made it to the parking lot where his girlfriend, Alaina Shelton, was in her parked vehicle. Shelton started her car, and defendant got in on the passenger side and ordered Shelton to drive away. At the same time, Parole Officer Hower grabbed the door handle. Defendant was yelling for Shelton to drive. The parole officer held onto the door handle of the moving vehicle for a short time, but soon fell to the ground and received minor injuries. Defendant was not apprehended.

[¶4.] On October 30, 2008, Jeff Goble, an agent with the Division of Criminal Investigation, learned that defendant and Shelton were staying in a trailer house near Family Thrift Center. Agent Goble set up surveillance at the trailer court and contacted the Rapid City Police Department for assistance. While Agent Goble was waiting for assistance, Shelton and defendant left the trailer and got into Shelton's vehicle to drive away. Agent Goble and Detective Aric Lopez used a vehicle to create a roadblock in an attempt to stop Shelton's vehicle. Agent Goble ordered defendant and Shelton to stop and freeze. Detective Lopez drew his gun and ordered defendant and Shelton to stop the car. Shelton drove her vehicle off the road to go around the police vehicle. Shelton nearly hit Detective Lopez, who jumped out of the way to avoid being struck. Defendant and Shelton evaded capture.

[¶5.]    Defendant was finally taken into custody in November 2008. He was charged with two counts of first degree escape, in violation of SDCL 22-11A-2(3); one count of possession of a controlled substance (MDMA), in violation of SDCL 22-42-5; and one count of simple assault on a public officer, in violation of SDCL 22-18-1(2) and SDCL 22-18-1.05. He pleaded not guilty to all counts. Before trial, defendant moved to sever the charges. The circuit court denied defendant's request, and a jury trial was held. At the close of the State's case, defendant moved for a judgment of acquittal, which was denied.[1] The jury acquitted defendant of possession of a controlled substance, but found him guilty of simple assault on a public officer and both counts of first degree escape. On appeal, defendant asserts that the court abused its discretion when it refused his motion to sever and erred when it denied his motion for a judgment of acquittal.[2]

**Analysis and Decision**

[¶6.]    Defendant argues that the court abused its discretion when it denied his motion to sever the four counts in the indictment. He maintains that the acts necessary to prove each offense were insufficiently connected to warrant joinder.

---

1.    Although defense counsel termed his motion as one for a "directed verdict," counsel requested the court to enter an acquittal based on the State's failure to present sufficient evidence.

2.    Standard of Review: a motion to sever is reviewed for an abuse of discretion. State v. Thompson, 1997 SD 15, ¶14, 560 NW2d 535, 538 (citing State v. Busack, 532 NW2d 413, 417 (SD 1995)). A denial of a judgment of acquittal, however, is a question of law reviewed de novo. State v. Kessler, 2009 SD 76, ¶10, 772 NW2d 132, 135 (citing State v. Packed, 2007 SD 75, ¶17, 736 NW2d 851, 856 (quoting State v. Disanto, 2004 SD 112, ¶14, 688 NW2d 201, 206 (citing United States v. Staula, 80 F3d 596, 604 (1stCir 1996)))).

He further argues that he was prejudiced by the joinder. The State responds that defendant's actions were all part of a common scheme or plan to avoid arrest.

[¶7.]        "Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." SDCL 23A-6-23. From our review of the record, the acts surrounding defendant's four counts were connected and constitute part of a common plan or scheme. Although defendant was not specifically informed by Gray that his urine sample tested positive for MDMA, it is reasonable to conclude that defendant's flight was connected to his belief that his sample was dirty. Defendant was in Gray's office to discuss the results of the State Laboratory's test of his previous dirty urine sample, and defendant ran out of the office when Gray asked him to stand up, turn around, and put his hands behind his back. Then, to avoid arrest, defendant ordered his girlfriend to continue to drive while Parole Officer Hower was holding onto the door handle. Defendant continued to evade capture when, on October 30, he and his girlfriend drove away after Agent Goble and Detective Lopez ordered them to stop.

[¶8.]        Defendant has also failed to establish that he was unfairly prejudiced by the joinder of all counts. *See* SDCL 23A-11-2. A higher degree of prejudice must be shown to overcome the purpose of joinder. *See* State v. Dixon, 419 NW2d 699, 703 (SD 1988) (quoting State v. Hoffman, 316 NW2d 143, 157 (Wis 1982)). Defendant argues that he was substantially prejudiced because testimony related to

the four charges was used by the jury to improperly convict him. Although "[a]ny joinder of offenses is apt to involve some element of prejudice" to an accused, here the evidence related to the charges was so intertwined that defendant was not unfairly prejudiced. *See* State v. Sabers, 442 NW2d 259, 263 (SD 1989) (quoting *Dixon*, 419 NW2d at 703). Moreover, the court instructed the jury to consider each charge independently. *See Busack*, 532 NW2d at 417. That the jury properly considered each charge individually is supported by the fact defendant was acquitted of the possession count. We find no abuse of discretion in the court's denial of defendant's motion to sever.

[¶9.] Defendant next asserts that the court erred when it denied his motion for a judgment of acquittal on the assault charge. He argues that the State presented no evidence that he recklessly caused bodily injury to a public officer because he took no specific actions against the parole officer when the officer was injured. "Any person who: . . . (2) Recklessly causes bodily injury to another . . . is guilty of simple assault." SDCL 22-18-1(2). Reckless conduct encompasses actions evincing a conscious and unjustified disregard of a substantial risk that such actions may cause a certain result. Although defendant did not personally injure Parole Officer Hower, defendant does not dispute that he ordered Shelton to continue to drive while Hower was holding onto the car handle and running beside the moving vehicle. Defendant's conduct was a conscious and unjustified disregard for substantial risk of harm to Hower. The court did not err when it refused a judgment of acquittal on this charge. There was sufficient evidence to support defendant's conviction for simple assault on a public officer.

[¶10.]     Defendant next asserts that the court erred when it denied his motion for a judgment of acquittal on the two escape charges. He was charged with escaping the "immediate custody" of a law enforcement officer or a Department of Corrections employee. *See* SDCL 22-11A-2(3). According to defendant, he was not in the *immediate custody* of anyone at either time he evaded capture, and therefore, could not be guilty of escape. The State, on the other hand, argues that because defendant was a parolee, he was in the legal custody of the Department of Corrections, and therefore, was in custody at the times he evaded capture. The State further contends that because Gray attempted to restrain defendant, an arrest was made placing defendant in immediate custody for purposes of the first escape conviction. *See* SDCL 23A-3-5 (defining arrest).

[¶11.]     Perhaps the confusion over what constitutes first degree escape is encapsulated in the circuit court's instructions. In Instruction 7, the term "prisoner" was defined in accord with SDCL 22-11A-1. Then, in Instruction 8, the jury was told that for defendant to be guilty of first degree escape, the State must prove beyond a reasonable doubt that (1) "The defendant was in *custody* by being under arrest or by being under process of law issued from a court of competent jurisdiction, whether civil or criminal," (2) "The defendant *departed from custody* without lawful authority," (3) "The defendant *escaped from the immediate custody* of a law enforcement officer or a Department of Corrections employee." *See* South Dakota Criminal Pattern Jury Instruction #3-5-2.1 (emphasis added). The jury was also told that "[a]n arrest is the taking of a person into *custody* so that he may be held to answer for the alleged commission of a public offense" and "[a]n arrest is

-6-

made by an actual or *attempted restraint* of the person arrested or by his submission to the custody of the person making the arrest." Instruction 9 (emphasis added). Finally, the jury was instructed that "[a]ny person who is on parole is 'under process of law' and is considered a *prisoner*." Instruction 10 (emphasis added).

[¶12.]    The collective effect of these instructions resulted in conflicting uses of the term "custody" for first degree escape. First degree escape has three elements: (1) defendant was a "prisoner," (2) defendant "escaped," and (3) defendant either used threats or violence, escaped from a secure correctional facility, or escaped from "the immediate custody of a law enforcement officer or Department of Corrections employee." SDCL 22-11A-2. There was no dispute in this case that defendant was a "prisoner" as defined by SDCL 22-11A-1. Therefore, whether defendant was in "custody" as used in Instruction 8, element 1, was unnecessary. Instructions 7 and 10 already informed the jury that defendant was a prisoner, and therefore, in custody. Moreover, Instruction 9 declaring that one under arrest is in "custody" was equally unnecessary and confusing under these facts.

[¶13.]    Because SDCL 22-11A-2 sets forth the elements necessary for a conviction of first degree escape, we review the elements of that statute for whether the court erred when it denied defendant's motion for a judgment of acquittal. "Any escape by a prisoner constitutes first degree escape if the prisoner effects the escape: . . . (3) From the immediate custody of a law enforcement officer or Department of Corrections employee." *Id.* A "prisoner" is defined as "every person who is in custody by being under arrest or by being under process of law issued from a court of competent jurisdiction, whether civil or criminal." SDCL 22-11A-1.

Defendant was a "prisoner" as defined by the statute. He was on parole, and therefore, "under process of law issued from a court of competent jurisdiction[.]" *See id.* The question, therefore, was whether defendant was in immediate custody when he ran from Gray's office on October 22 and evaded capture on October 30.

[¶14.]     Immediate custody is not defined by SDCL ch. 22-11A, nor is there any South Dakota case interpreting the phrase. It seems reasonable, however, that by defining a "prisoner" as "every person who is in custody," whether by arrest or process of law, *see* SDCL 22-11A-1, the Legislature's use of "immediate custody" in SDCL 22-11A-2(3) requires more than legal custody. In contrast, escape from constructive custody, such as when a prisoner is on work release, is not first degree escape under SDCL 22-11A-2, as an escape in that circumstance constitutes second degree escape. *See* SDCL 22-11A-2.1.

[¶15.]     With no guidance from our statutes or case law, we would ordinarily turn to definitions from other jurisdictions. Yet a review of statutes and cases from other jurisdictions reveals no statutory language similar to SDCL 22-11A-2(3). The federal escape law and cases interpreting it are unhelpful because the law uses the phrase "any custody," which has been interpreted to include constructive custody, legal custody, and actual custody. Murphy v. United States, 481 F2d 57, 61 (8thCir 1973); 18 USCA 751(a) (an escape occurs when a person departs "any custody under or by virtue of any process issued under the laws of the United States by any court").

[¶16.]     Escape laws in other states have no immediacy requirement such as found in SDCL 22-11A-2(3). Nonetheless, certain court interpretations of "custody,"

and what is required for an escape, support the notion that "immediate custody" means more than an intent to arrest. In Colorado, to be guilty of escape there must be actual physical control before a person is "in custody[.]" People v. Thornton, 929 P2d 729, 734 (Colo 1996) (interpreting Colorado Code section 18-8-208(3)). Accordingly, "effecting an arrest, in the sense of establishing physical control over the arrestee," is sufficient. *Id.* at 733.

[¶17.] Vermont requires that a person be "in lawful custody" before an escape can be committed. State v. Turgeon, 676 A2d 339, 342 (Vt 1996), *overruled on other grounds by* State v. Brillon, 955 A2d 1108 (Vt 2008). In interpreting what "lawful custody" means, the Vermont Supreme Court defined it as physical restraint or submission to the officer's authority restraining one's liberty. *Id.* In *Turgeon*, law enforcement officers told defendant to "freeze" and attempted to arrest him. Defendant fled before an arrest could be effected. Because "defendant was never in the control of the officers," the court reversed defendant's conviction for escape. *Id.* at 343. In *State v. Blaine*, the defendant went to the police station to give his version of the events surrounding a dispute with a neighbor. 341 A2d 16, 17-18 (Vt 1975). While he was there an officer came into the room and told him they had a warrant for his arrest. The defendant drew a gun and fled the station. The Vermont court found that because the defendant did not submit to the show of authority and the officers had not physically restrained him, there was insufficient evidence to support the escape charge. *Id.* at 20-21.

[¶18.] From our Legislature's use of the term "immediate" in SDCL 22-11A-2(3), we think submission in the presence of lawful authority may be equivalent to

physical restraint. There must be either an exercise of physical control over the prisoner or a submission to physical control to constitute immediate custody. Thus, there need not be actual physical restraint through the use and application of force when the prisoner submits to the authority of a law enforcement officer or a Department of Corrections employee.

[¶19.]    Concerning the incident on October 22, 2008, Parole Officer Gray's testimony supports the notion that defendant initially submitted to immediate custody before he fled Gray's office. At trial, Gray explained that, as a parole agent, he is required to wear a police belt that contains pepper spray, handcuffs, and a firearm. Gray testified:

> Q:    And were you dressed on October 22, 2008, as you are today?
>
> A:    Yes.
>
> Q:    Were you wearing your police utility belt?
>
> A:    Yes.
>
> Q:    So during this meeting on October 22, did you inform the defendant about the test results?
>
> A:    Yes.
>        . . .
>
> Q:    At some point, did you give him a verbal command?
>
> A:    I did. I asked him to stand up . . . I asked him to stand up, turn around and put his hands behind his back.
>
> Q:    How did the Defendant respond to your command?
>
> A:    He did just what I asked him to. He stood up. He turned and he put – placed his hands behind his back.
>
> Q:    So after the Defendant stood up, turned around and put his hands behind his back, how did you respond?

> A:   I got out of my chair. I was walking around my desk and I unsnapped the – my handcuffs and I pulled my handcuffs out.
>
> Q:   And at that point, how did the Defendant respond?
>
> A:   He took off running like a jackrabbit.

As we must view the evidence in a light most favorable to the verdict, there was sufficient evidence that defendant was in Gray's immediate custody: defendant submitted to Gray's authority, in Gray's presence, when defendant put his hands behind his back to be handcuffed. *See* State v. Tofani, 2006 SD 63, ¶37, 719 NW2d 391, 401 (citation omitted). We affirm defendant's conviction for first degree escape on October 22, 2008.

[¶20.]     As for the occurrence on October 30, 2008, there was no evidence that defendant was in the immediate custody of anyone — by submission to authority or by physical restraint — at the time he evaded capture by Agent Goble and Detective Lopez. The circuit court erred as a matter of law when it failed to grant a judgment of acquittal on this escape charge.

[¶21.]     Affirmed in part and reversed in part.

[¶22.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.